668 P.2d 1104

Michael WILSON and Diane Wilson his wife, Individually and as Parents, Guardians and Next Friends of Zachariah Zebadee Lee Wilson, an infant, and Santa Fe National Bank, as Conservator of the Estate of Zachariah Zebadee Lee Wilson, an infant, Plaintiffs-Appellants, Cross-Appellees,

v.

Charles E. GALT, Jr., M.D., Catherine Armstrong, M.D., Carlsbad Regional Medical Center and J.F. Haynes, M.D., Defendants-Appellees, Cross-Appellants,

J.F. HAYNES, M.D., Third-Party Plaintiff-Appellee, Cross-Appellant,

v.

Bonnie DITTUS, Third-Party Defendant-Cross-Appellee.

No. 5503.

Court of Appeals of New Mexico.

June 21, 1983.

Certiorari Quashed Aug. 19, 1983.

John A. Mitchell, Mitchell, Alley & Rubin, Santa Fe, for plaintiffs-appellants, cross-appellees.

Alan Konrad, Miller, Stratvert, Torgerson & Brandt, P.A., Albuquerque, for defendant-appellee, cross-appellant, Galt.

Thomas J. McBride, Johnson & Lanphere, P.C., Albuquerque, M. Rosenberg, Carlsbad,

for defendant-appellee, cross-appellant, Haynes.

## OPINION

BIVINS, Judge.

Plaintiffs Michael and Diane Wilson, parents of Zachariah Lee Wilson, (Zach), an infant, and Santa Fe National Bank, as Zach's conservator, sued three physicians and the Carlsbad Regional Medical Center (Hospital) for damages allegedly resulting from the negligent care and treatment of Zach.

Zach was born on February 3, 1976 at the Hospital. Defendant Charles E. Galt, Jr. (Dr. Galt) was the obstetrician who cared for the mother and baby until their release from the hospital on February 6, 1976. Defendant Catherine Armstrong (Dr. Armstrong), a pediatrician, began caring for Zach approximately five days after discharge from the Hospital. His mother took Zach back to the hospital on February 9, 1976 for a PKU test and again on February 11, 1976 for additional tests. Defendant J.F. Haynes (Dr. Haynes) supervised the lab at the hospital. Third-party defendant Bonnie Dittus (Dittus), a lab technician employed by the hospital, administered the tests. Following the tests, Dr. Armstrong continued to care for Zach. Because of continued problems with the baby's crying and feeding, the parents took Zach to Bernalillo County Medical Center in Albuquerque where brain damage caused by bilirubin encephalopathy was diagnosed.

Prior to trial plaintiffs settled with Dr. Armstrong, the Hospital and Dittus (the latter was included although she had not been sued by plaintiffs). The jury answered the special instruction given them as follows:

Damages: $500,000 for Zach's injuries
$10,000 for parents' injuries

Apportionment of fault:

| | |
|---|---:|
| Dr. Armstrong | 65% |
| Hospital | 15% |
| Dittus | 5% |
| Dr. Haynes | 15% |
| Dr. Galt | 0% |
| | 100%. |

The amount of the settlement paid by the settling defendants substantially exceeded the $510,000 which the jury found plaintiffs should recover as total damages. The trial court held that as a matter of law plaintiffs were not entitled to additional recovery, since the settlement exceeded the damage award. Judgment was entered in favor of Dr. Galt and Dr. Haynes and costs assessed against plaintiffs. Plaintiffs appeal raising seven issues:

A. Is a tortfeasor relieved of his several share of liability if settling tortfeasors pay an amount which exceeds plaintiffs' damages?

B. Did the trial court err in dismissing the parents' claims of damages for:

 A. loss of Zach's society and companionship; and

 B. mental pain and anguish suffered as bystanders?

C. Did the trial court err in dismissing the claim for punitive damages?

D. Did the trial court err in excluding medicare regulations?

E. Can written admissions by a settling defendant come in at trial as evidence?

F. Did the trial court err in instructing the jury?

G. Was it proper to assess costs against plaintiffs?

A. The effect of the settlement on Dr. Haynes' liability.

At the outset we note that this case was tried after *Claymore v. City of Albuquerque, aff'd sub nom, Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981), but before *Bartlett v. New Mexico Welding Supply, Inc.,* 98 N.M. 152, 646 P.2d 579 (Ct.App.1982), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982).

The issue presented is: As a matter of law can an injured party recover an amount reflecting a nonsettling tortfeasor's negligence when the injured party has recovered, through settlement with other tortfeasors, an amount in excess of the entire damage award determined by the jury?

In order to answer this question we must first review the common law with respect to joint and several liability, the effect of release of one tortfeasor and contribution among tortfeasors; the change in the law effected by the Uniform Contribution Among Tortfeasors Act, NMSA 1978, §§ 41–3–1 to 41–3–8 (Repl.Pamp.1982) (hereafter the "Uniform Act"); and the impact of *Bartlett.*

At common law each tortfeasor was jointly as well as severally liable for damages arising from an injury. Prosser, *Law of Torts,* §§ 46–49 (4th ed. 1971); *Bartlett.* No right of contribution existed, however, among joint tortfeasors. *Rio Grande Gas Company v. Stahmann Farms, Inc.,* 80 N.M. 432, 457 P.2d 364 (1969). The release of one joint tortfeasor at common law released all other tortfeasors. *Herrera v. Uhl,* 80 N.M. 140, 452 P.2d 474 (1969); *Downer v. Southern Union Gas Co.,* 53 N.M. 354, 208 P.2d 815 (1949).

Adoption of the Uniform Act in 1947 gave joint tortfeasors the right to contribution, but it did not change the common law rule of joint and several liability. Section 41–3–2; *Rio Grande Gas Company v. Stahmann Farms, Inc.* Under the Uniform Act a settling tortfeasor could protect himself not only from further liability to the injured person, but also from other tortfeasors seeking contribution. *See Garrison v. Navajo Freight Lines, Inc.,* 74 N.M. 238, 392 P.2d 580 (1964). Further, once a joint tortfeasor had discharged the common liability or paid more than his *pro rata* share thereof, he could seek contribution. The rule against double recovery together with the settling tortfeasor's ability to protect himself from contribution placed the risk of obtaining only partial recovery on the injured person.

■ What effect did *Bartlett* have on this state of the law? *Bartlett* held that "Joint and several liability is not to be retained in our pure comparative negligence system . . . ." 646 P.2d at 585. It also

rendered the concept of one indivisible wrong obsolete with respect to comparative negligence cases involving more than one tortfeasor. Thus, the injured person bears the risk of not recovering from a responsible tortfeasor who does not pay, for whatever reason.

■ Since joint and several liability provides the foundation under the Uniform Act for the *pro rata*[1] allocation of burden among tortfeasors, *Bartlett* effectively eliminates any basis for contribution among concurrent tortfeasors. *See* H. Woods, *Comparative Fault,* § 13.5 (1978). If each concurrent tortfeasor is liable only for his respective share of the negligence, no need exists for him to invoke the Uniform Act and either seek contribution from other tortfeasors or protect himself against having to contribute. Thus, the Uniform Contribution Among Tortfeasors Act no longer has force in this State with respect to contribution among concurrent tortfeasors. *See* H. Woods, *Comparative Fault,* § 13.5 (1978).

If the injured person settles with one tortfeasor for an amount equal to or, as here, in excess of the amount of damages, would the injured person be receiving double recovery if the nonsettling tortfeasors must pay their apportioned share of damages? Because of the uniqueness of New Mexico's laws, as summarized above, we have found no precedent, thus leaving the question open. It will be helpful to discuss the possible alternatives and the likely consequences.

■ As one possibility, we could revive the common law rule that the release of one tortfeasor released all others. Since the common law rule clashes with *Bartlett,* which abolished joint and several liability, we decline to apply it here.

Another approach would be to construe the Uniform Act, in light of *Claymore* and *Bartlett,* to permit contribution among the tortfeasors. At first blush, this approach

1. The term *"pro rata* share" is not defined in the Uniform Act; however, the Supreme Court construed it to mean "equal shares" in *Com-* *mercial U. Assur. v. Western Farm Bur. Ins.,* 93 N.M. 507, 601 P.2d 1203 (1979).

has a certain logical appeal. The Uniform Act would for the most part remain intact. The injured party would not receive double recovery, and the settling tortfeasor could seek contribution. However, without joint and several liability, which is the foundation of the Uniform Act and the common law rule, there is no longer a need for contribution. In addition this approach offers little incentive for the injured person to settle with one or fewer than all of the tortfeasors. As we have held, contribution no longer applies to concurrent tortfeasors liable on the basis of each tortfeasor's negligence.

 A third approach, and the one we find most suitable, would be to allow the injured person to pursue recovery from each severally liable tortfeasor without reduction. Under *Claymore* and *Bartlett,* each tortfeasor is responsible only for his respective share. If the injured person settles and releases one tortfeasor, the consideration paid would satisfy only that tortfeasor's percentage of fault, even though no jury determination of the amount of his liability exists at the time of settlement. If the injured person pursues his claim against the other tortfeasors, recovery will be only against them for their respective shares of fault. Thus, the injured person, by settling, would not recover more than his total damages, because each tortfeasor would pay, by settlement or judgment, only his respective share. The factfinder would still assess the injured person's total damages and apportion fault among all tortfeasors, present or absent.[2] If the settling tortfeasor paid more in settlement than his apportioned share of the total damages as determined, the injured person, without reduction, would retain the benefit of the contractually made bargain. On the other hand, if the settlement turned out to be less, the injured person could not recover the shortfall either from the settling tortfeasor, or the others.

Reduction of the recovery against nonsettling defendants by the percentage of negligence attributable to the settling defendants, as opposed to a specific dollar amount paid in settlement, would carry out the principles laid down in *Claymore* and *Bartlett. See Nagunst v. Western Union Telegraph Co.,* 76 F.R.D. 631 (D.Kan.1977).

Policy considerations favor this approach. It encourages settlements. If a tortfeasor desires to buy his peace, he should be able to evaluate not only the damages but his share of the fault and settle on that basis. Having done so, he is free of further liability to the injured person and to other tortfeasors for contribution. This approach also discourages other tortfeasors from taking advantage of the good faith efforts of settling tortfeasors. If reduction of money damages is allowed, the nonsettling tortfeasor would likely sit back knowing not only that he could be liable in any event merely for his share, but also, if by chance the settling tortfeasor pays an amount greater than the total damages, as determined by the jury, he will not have to pay at all. He has the added advantage during the trial of placing the blame on the settling absent tortfeasors.

We find the logic and policy for this approach persuasive and adopt it here. The end result under the approach we take accords with *Claymore* and *Bartlett.*[3]

 Having so concluded, we must now determine whether this new rule should apply to this case. The written settlement agreements between plaintiffs and Dr. Armstrong, Hospital and Dittus protected the settling parties against contribution by requiring, among other things, that plaintiffs reduce any judgment for damages against all other tortfeasors as contemplated by the Uniform Act. That intent was confirmed at a pretrial conference held before trial. Plaintiffs' counsel, in response

---

2. NMSA 1978, UJI Civ. 18.25 (Repl.Pamp.1980) is no longer appropriate in its present form. The jury should be instructed to assess the full amount of damages; however, the portion informing the jury that the court will make any offset or reduction no longer applies.

3. *See Vaca v. Whitaker,* 86 N.M. 79, 519 P.2d 315 (Ct.App.1974), for discussion of cases dealing with the rule against double recovery.

to a question from the trial court, said, "[T]he credit would be the amount paid . . . ." Plaintiffs assert that because Dr. Haynes was 15% negligent, they are entitled to recover 15% of $510,000.00 from Dr. Haynes. Our holding in this opinion agrees with this approach as the general law, but the applicability of this general law is affected by the settlement agreement. Plaintiffs agreed to credit the amount of the settlement against any recovery from the non-settling defendants. They are bound by their bargain. *See Esquibel v. Brown Construction Company, Inc.,* 85 N.M. 487, 513 P.2d 1269 (Ct.App.1973). We are not concerned with the rights, if any, the settling defendants may have under the Uniform Act; that is not an issue on this appeal.

Our holding then will not apply to this case because of the settlement agreement.

B. Dismissal of portions of plaintiffs' complaint for failure to state a claim.

■ In their complaint the parents of Zach sought damages for bystander recovery and for loss of Zach's society and companionship. The trial court dismissed these claims on the basis that they failed to state claims upon which relief can be granted. NMSA 1978, Civ.P.R. 12(b)(6) (Repl.Pamp. 1980). In reviewing the propriety of this ruling, the allegations as to those elements of damages must be taken as true. *Bottijliso v. Hutchison Fruit Co.,* 96 N.M. 789, 635 P.2d 992 (Ct.App.1981).

1. Bystander recovery.

■ The plaintiff parents alleged severe mental pain and anguish resulting from the acts and omissions of defendants. The detailed complaint indicates no observance by either parent of a sudden trauma involving Zach. The allegations suggest a gradual occurrence of harm, and awareness by the parents of the deterioration but not of the cause.

In *Aragon v. Speelman,* 83 N.M. 285, 491 P.2d 173 (Ct.App.1971), we refused to permit bystander recovery where a mother witnessed her son flying through the air above defendant's vehicle after being struck. The plaintiff parents here ask that we adopt the rule of *Dillon v. Legg,* 68 Cal.2d 728, 441 P.2d 912, 69 Cal.Rptr. 72 (1968), which recognized bystander recovery for a mother who witnessed the defendant's car colliding with her infant daughter, where the emotional distress and shock suffered resulted in physical injuries.

California has refused to extend *Dillon v. Legg* to the medical malpractice field, since that case required close proximity to the scene and sensory and contemporaneous observance of the accident. *Jansen v. Children's Hospital Medical Center,* 31 Cal. App.3d 22, 106 Cal.Rptr. 883 (Cal.App.1973), *see also, Hair v. County of Monterey,* 45 Cal.App.3d 538, 119 Cal.Rptr. 639 (Cal.App. 1975); Annot., 77 A.L.R.3d 447 (1977). As pointed out in *Portee v. Jaffee,* 84 N.J. 88, 417 A.2d 521 (1980), it is an essential element that the plaintiff contemporaneously witness the incident and some immediate resulting harm. That element, in the context of bystander recovery, is missing here.

The plaintiff parents did not state a claim for bystander recovery.

2. Loss of companionship.

The plaintiff parents sought damages for loss of Zach's society and companionship. The question presented is whether such loss is actionable in New Mexico. Plaintiffs urge this Court to recognize a cause of action for this loss.

While the appellate courts of New Mexico have not ruled on the precise question, the Tenth Circuit recently had occasion to review a dismissal of a claim for loss of a minor's society and affection in a medical malpractice action arising in this State. In *Hoskie v. United States,* 666 F.2d 1353 (10th Cir.1981), the Court said:

The district judge correctly dismissed Pauline and Jimmy Hoskie's claim for damages for loss of Tilman's services, society, and affection. After a pre-trial hearing, the judge concluded that New Mexico law "[d]oes not permit parents to recover for lost consortium from their

child in a negligence action." Record, vol. 1, at 16. There is presently no New Mexico case law on this particular issue. However, the New Mexico Supreme Court has refused to recognize a wife's cause of action for loss of consortium when her husband was negligently injured. *Roseberry v. Starkovich,* 73 N.M. 211, 387 P.2d 321 (1963). Furthermore, the New Mexico Jury Instructions specifically forbid an instruction for loss of consortium to be given at trial. UJI Civ. 21.12, N.M.Stat.Ann., Judicial Vol. 2 (1980). From our review of New Mexico law, we conclude that the district court correctly interpreted that state's law on this issue.

We agree with the Tenth Circuit's interpretation. In denying a wife's cause of action for loss of consortium where the husband was negligently injured, the Supreme Court in *Roseberry v. Starkovich,* 73 N.M. 211, 387 P.2d 321 (1963), distinguished between intentional interference with consortium, which is actionable, and negligent damage which is not. The Court said, "that while the one is a direct injury to consortium, a relationship entitled to protection under the law, the other is purely a coincidental result occurring without purpose or intent of the tortfeasor." *Id.* at 215, 387 P.2d 321. If the Supreme Court was reluctant to recognize loss of spousal consortium, it is unlikely that it would allow a cause of action as between parent and child.

Noting significant differences between the marital relationship and the parent-child relationship that would support limiting a cause of action for loss of consortium to the former, the Supreme Court of California, a state which recognizes a cause of action for spousal loss of consortium, denied such an action for a child's loss of a parent's consortium and a parent's loss of a child's consortium in companion cases. *Borer v. American Airlines, Inc.,* 19 Cal.3d 441, 563 P.2d 858, 138 Cal.Rptr. 302 (1977); *Baxter v. Superior Court of Los Angeles Cty.,* 19 Cal.3d 461, 563 P.2d 871, 138 Cal.Rptr. 315 (1977).

The *Borer* Court, referring to the earlier decision recognizing a cause of action for spousal loss of consortium, said:

> *Rodriguez* [*v. Bethlehem Steel·Corp.,* 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669 1974], thus, does not compel the conclusion that foreseeable injury to a legally recognized relationship necessarily postulates a cause of action; instead it clearly warns that social policy must at some point intervene to delimit liability. Patricia Borer, for example, foreseeably has not only a husband (who has a cause of action under *Rodriguez*) and the children who sue here, but also parents whose right of action depends upon our decision in the companion case of *Baxter v. Superior Court;* foreseeably, likewise, she has brothers, sisters, cousins, inlaws, friends, colleagues, and other acquaintances who will be deprived of her companionship. No one suggests that all such persons possess a right of action for loss of Patricia's consortium; all agree that somewhere a line must be drawn.

563 P.2d at 861–862, 138 Cal.Rptr. at 305–306.

The companion case of *Baxter* involved facts remarkably similar to those in the instant case. There the parents sued a hospital and attending physicians seeking recovery, *inter alia,* for loss of filial consortium resulting from injuries suffered by their sixteen-year-old son, who was rendered unconscious as a result of general anesthesia and reduced to the mental age of 3, suffering total blindness, severe impairment of hearing and partial paralysis. Adopting for the most part the policy considerations in *Borer* which compelled the court to conclude that a child should not have a cause of action for loss of parental consortium, *Baxter* denied a cause of action to the parents for loss of filial consortium. The *Baxter* Court summarized the policy considerations as follows: (1) intangible character of the loss; (2) difficulty of measuring damages; (3) dangers of double recovery; and (4) extensive liability.

The *Baxter* Court noted that the few jurisdictions which had sustained the paren-

tal cause of action did so by treating the child's affection and companionship as among the "services" to which the parent is entitled. *Baxter* refused to expand loss of services of a child to include loss of society. We likewise refuse to do so.

We have carefully considered the cases relied on by plaintiff parents and find them either distinguishable or unpersuasive. *See, e.g., Green v. Bittner,* 85 N.J. 1, 424 A.2d 210 (1980); *Shockley v. Prier,* 66 Wis.2d 394, 225 N.W.2d 495 (1975).

■ Applying the rationale of *Roseberry v. Starkovich,* and policies set out in *Borer,* we hold that a parent has no action for loss of filial consortium.

## C. Punitive damages.

Plaintiffs sought punitive damages from defendants. On Dr. Galt's motion for summary judgment, in which the other defendants joined at hearing apparently without objection, the trial court granted partial summary judgment eliminating this element of damages. Plaintiffs claim the trial court erred in eliminating this claim and in refusing to give plaintiffs' tendered instructions on punitive damages.

■ As to Dr. Galt since the jury found no liability, there could be no award of punitive damages in any event. There must first be an award of compensatory damages to support an award of punitive damages. *Grandi v. LeSage,* 74 N.M. 799, 399 P.2d 285 (1965).

■ Although plaintiffs have not pointed to any evidence that raises a fact question, they take the position that their own responses to the motions for summary judgment sufficiently foreclose summary judgment. We have examined these responses and find nothing that raises a fact question as to punitive damages. Moreover, the responses are not sworn affidavits nor do they contain facts based on personal knowledge; therefore they do not comply with NMSA 1978, Civ.P.R. 56(e) (Repl.Pamp.1980).

■ Nevertheless, plaintiffs say that they have no burden to prove the existence of material facts; rather the burden of making a *prima facie* showing lies with the moving party. This is correct. *Goodman v. Brock,* 83 N.M. 789, 498 P.2d 676 (1972). The record of this case, however, reflects that plaintiffs requested only a partial transcript; thus, we do not have available for review the missing testimony claimed to have been available to the trial court when it ruled. Facts necessary for review can only be established through a transcript of the record, and any fact not so established is not before this Court. NMSA 1978, Civ. App.R. 7 (Cum.Supp.1982); *Nix v. Times Enterprises, Inc.,* 83 N.M. 796, 498 P.2d 683 (Ct.App.1972). Moreover, where a party opposing summary judgment claims the existence of material issues of fact, he must apprise the trial court of those factual issues; he has no less burden on appeal. *Wilson v. Albuquerque Board of Realtors,* 81 N.M. 657, 472 P.2d 371 (1970). Plaintiffs have not met this requirement. The trial court's ruling excluding punitive damages must stand.

## D. Medicare regulations.

Plaintiff sought to introduce medicare regulations governing the operations of laboratories which seek reimbursement through the Medicare Act against Dr. Haynes.

The only specific reference plaintiffs make is to 20 C.F.R. § 405.1028(d)(1) (1975). That section requires a laboratory to be supervised by either an experienced physician or a laboratory specialist with a doctoral degree. In their tender, plaintiffs established that the laboratory never had a "Ph.D chief technologist" or other supervisory technologist; the record reflects, however, that the laboratory did have a physician who presumably was experienced.

■ Plaintiffs do not contend that Dr. Haynes violated "a particular Medicare regulation or standard and thereby caused injury to Zach, but rather that [Dr.] Haynes failed to perform his duties . . . [as director of the laboratory] in a competent, expert and professional manner and that his failures so to perform caused injury to Zach."

Plaintiffs point out that in *Hines v. St. Joseph's Hospital,* 86 N.M. 763, 527 P.2d 1075 (Ct.App.1974), a showing of compliance with regulations was evidence of due care. They contend that the Medicare regulations concerning laboratories were admissible because Dr. Haynes' "knowledge of and compliance with Medicare regulations and standards was relevant to a determination of whether or not he acted with due care . . . ." In the absence of a claim that a regulation or standard was violated, the tendered regulations did not tend to prove that Dr. Haynes failed to perform his duties in a competent, expert and professional manner. Thus, the regulations were not relevant, *see* NMSA 1978, Evid.R. 401, and were properly excluded.

E. Admissions made by settling defendant.

■ Although Dr. Armstrong had settled before trial, she was under subpoena and available to appear and testify. Instead of calling her, plaintiffs offered Dr. Armstrong's admissions made pursuant to NMSA 1978, Civ.P.R. 36 (Repl.Pamp.1980). The trial court refused the offer. Rule 36 admissions apply to and bind the party making the admission, not adverse co-defendants. Plaintiffs rely on NMSA 1978, Evid.R. 801(d)(2), which excludes from the definition of hearsay, admissions by a party-opponent. Dr. Armstrong, however, was not a party. That rule cannot apply. Her admissions likewise could not come in under NMSA 1978, Evid.R. 804(b)(4), because she was not unavailable. Thus, the admissions constituted inadmissible hearsay as to Drs. Galt and Haynes and were properly excluded.

F. Instructions.

While plaintiffs attack five of the court's instructions, we need discuss only No. 14. In determining the comparative negligence of the absent defendants, the challenged instruction required the jury to determine if one or more of the claimed acts of negligence of those defendants was a proximate cause of Zach's injuries. The instructions

included a separate list of claimed acts of negligence as to each absent defendant.

Plaintiffs argue that this instruction, taken with other instructions defining the duty of each absent defendant, was misleading and prevented plaintiffs from presenting their claims against the non-settling defendants. Claiming they were prejudiced because the non-settling defendants blamed one another as well as the settling defendants, plaintiffs contend the instructions detracted from their primary presentation against Drs. Galt and Haynes. Specifically, plaintiffs argue that apportionment of fault among the non-settling defendants and the settling defendants should occur "only after [the] jury returns [a] verdict . . . ."

■ Plaintiffs are incorrect. *Bartlett* made clear that the negligence of an absent tortfeasor can be considered in apportioning fault. It was not error to instruct the jury as to the duty of absent tortfeasors and the claimed acts of negligence by those tortfeasors.

As to the remaining instructions complained of, plaintiffs failed to preserve error by making a proper objection. *American Telephone & Tel. Co. of Wyo. v. Walker,* 77 N.M. 755, 427 P.2d 267 (1967).

G. Costs.

In its judgment the trial court ordered that Dr. Galt and Dr. Haynes "recover their costs of action from the plaintiffs, jointly and severally." No doubt the award of costs for Dr. Haynes was based on the court's determination that because of settlement in excess of the verdict, plaintiffs were barred from recovering any additional sum from any other party. The jury found no liability as to Dr. Galt.

■ Claiming Dr. Galt did not "prevail" except as to the other defendants, plaintiffs suggest that as between plaintiffs and Dr. Galt, each should bear their respective costs. This argument has no merit. Dr. Galt did prevail; he is entitled to his costs.

■ The trial court incorrectly awarded costs in favor of Dr. Haynes. In view of the jury's finding of 15% negli-

gence, plaintiffs should recover their costs against Dr. Haynes. Plaintiffs ask for costs directly attributable to Dr. Haynes and 15% of the general costs of suit. The matter of assessing costs under NMSA 1978, Civ.P.R. 54(d) (Repl.Pamp.1980), is for the trial court. *Matter of Estate of Head,* 94 N.M. 656, 615 P.2d 271 (Ct.App.1980).

## CONCLUSION

The judgment is affirmed, and the case remanded for assessment of costs in accordance with this opinion. Plaintiffs and Dr. Haynes shall each bear one-half of the costs of appeal.

IT IS SO ORDERED.

WOOD, C.J., and NEAL, J., concur.