877 P.2d 580 (1994)
117 N.M. 773
Cristobal PEREA and Zenon Ramos, Plaintiffs-Appellants,
v.
Maria SNYDER, a farm labor contractor, Progressive Insurance Company, their statutory insurance carrier, and the Ikard Corporation and its statutory insurance carrier, Ranger Insurance Company, Defendants-Appellees.
No. 14556.
Court of Appeals of New Mexico.
May 10, 1994.
Certiorari Denied June 17, 1994.
*581 John J. Duhigg, Duhigg, Cronin & Spring, P.A., Helena Gorochow, Albuquerque, for plaintiffs-appellants.
Juan L. Flores, Sheehan, Sheehan & Stelzner, P.A., Albuquerque, for defendants-appellees.

OPINION
BIVINS, Judge.
Plaintiffs, Cristobal Perea and Zenon Ramos (Plaintiffs), appeal an order of the district court which denied Ramos' motion to reform a release and granted a motion for summary judgment directed against Ramos. We treat the motion to reform as Plaintiff Ramos' showing in opposition to summary judgment. We affirm summary judgment as to Plaintiff Ramos but reverse and remand as to Plaintiff Perea. We affirm the denial of the motion to reform.

FACTS
On January 2, 1991, Plaintiffs, passengers on a farm labor bus owned by Defendant Maria Snyder and driven by Carlos Snyder, allegedly suffered injuries when their bus collided with a propane truck, owned by Defendant Ikard Corporation (Ikard) and driven by one of its employees. On January 10, 1991, eight days following the accident, Plaintiff Ramos signed a release in exchange for $4000 which released Carlos Snyder and Maria Snyder and "every other person, firm, or corporation." It does not appear from the record that either Ikard or its insurance company (collectively Ikard) was involved in securing the release or paying any of the consideration for it.
A little over a year later, Plaintiff Perea filed suit against Maria Snyder, Ikard, and their respective insurance companies for damages allegedly resulting from the January 2, 1991, accident. The complaint was amended a month later to add Plaintiff Ramos as an additional plaintiff. After it learned of the execution of the release by Plaintiff Ramos, Ikard filed a motion for summary judgment relying on the general release clause in Plaintiff Ramos' release. The motion sought summary judgment against Plaintiff Ramos only.
In response to Ikard's motion for summary judgment, Plaintiff Ramos and a person named "Pereira" who was actually referred to as a "plaintiff" (Pereira) moved to reform the general release clause in Plaintiff Ramos' release. Issues have been raised on appeal as to the identity of Pereira. In support of their motion to reform, Plaintiff Ramos and Pereira attached a copy of the same release relied on by Ikard which had been signed by Plaintiff Ramos. The motion asserted that a release in that form had been executed by Plaintiff Ramos and Pereira in favor of Carlos Snyder and Maria Snyder. The motion also asserted that Plaintiff Ramos and Pereira did not intend to release anyone other than Carlos Snyder and Maria Snyder, and thus Plaintiff Ramos and Pereira asked the court to reform the release to limit the scope of the release to Carlos Snyder and Maria Snyder. The only authorities relied on in the motion were cases relating to the effect of settlement on joint tortfeasors' liability. They then asked the court to defer hearing on Ikard's motion for summary judgment until the court had acted on their motion to reform release.
Ikard responded to the motion to reform release arguing, among other things, that there was a lack of jurisdiction over "Pereira"; that the request for reformation was not properly before the court; that extraordinary circumstances did not exist to reform; and that reformation is not available where there is only a mistake as to the legal effect of the release. Ikard objected to postponing hearing on its motion for summary judgment pending disposition of Plaintiff Ramos and Pereira's motion to reform.
A hearing was held on October 14, 1992, to consider the motion to reform release. Because there was no evidentiary support for the motion, the district court gave Plaintiff Ramos and Pereira thirty days to provide evidence. Ikard's motion for summary judgment was scheduled for hearing on October 27, 1992, but was postponed until Plaintiff Ramos and Pereira secured an affidavit and other evidence in support of their motion to reform.
On November 17, 1992, Plaintiff Ramos then filed an affidavit reciting that he had *582 been contacted by a representative of the insurance company for Carlos Snyder and Maria Snyder and offered $4000 in exchange "for a release of Carlos Snyder and Maria Snyder only." Plaintiff Ramos also stated that he agreed to the release and signed it with the understanding that he was releasing only Carlos Snyder and Maria Snyder and not Ikard, its driver, or anyone other than Carlos Snyder and Maria Snyder.
In December 1992, after hearing arguments on the motion to reform and motion for summary judgment, the district court denied Plaintiff Ramos and Pereira's motion to reform and granted Ikard's motion for summary judgment against both Plaintiff Ramos and Plaintiff Perea. This appeal by Plaintiffs followed.

DISCUSSION
Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. SCRA 1986, 1-056(C) (Repl. 1992); Koenig v. Perez, 104 N.M. 664, 665, 726 P.2d 341, 342 (1986). Plaintiffs claim that genuine issues of material fact exist as to whether they intended to release anyone other than Carlos Snyder and Maria Snyder. Additionally, they argue that a general release is incompatible with New Mexico's comparative negligence law and the abolition of joint and several liability and that prior case law upholding a general release should be considered in light of those recent developments in tort law. Ikard argues that the validity of the general release must be determined by contract principles and when those principles are applied to this case, summary judgment was properly granted. We first address the summary judgment motion granted against Plaintiff Perea.

Plaintiff Perea
On September 25, 1992, Ikard moved for summary judgment filed against Plaintiff Ramos only. Neither the motion nor any of the attachments to the motion mentioned Plaintiff Perea. Plaintiff Ramos and a person named Pereira then moved to reform the release. The district court subsequently granted summary judgment against both Plaintiffs.
We determine as a matter of law that summary judgment against Plaintiff Perea was improperly granted because no motion for summary judgment was ever directed specifically against him. Because of this determination, we find it unnecessary to decide whether Pereira, the person mentioned in the motion to reform, was actually Plaintiff Perea. If it were necessary to decide, we would have to remand the case because the record on appeal does not contain sufficient information to make this decision.
SCRA 1-056(D) states that summary judgment motions "will not be considered unless filed within a reasonable time ... to allow sufficient time for the opposing party to file a response[.]" In order to satisfy this notice requirement, a motion must be directed to specific parties. A movant has the option to amend the summary judgment motion to add additional parties or to change parties if that becomes necessary with the motion relating back to the date of the original motion if the party "has received such notice ... that he will not be prejudiced[.]" Cf. SCRA 1986, 1-015(C)(1) (Repl.1992).
We are unable to conclude that Plaintiff Perea received proper notice that Ikard had moved for summary judgment against him because Ikard never amended its motion for summary judgment against Plaintiff Ramos to include Plaintiff Perea. By failing to amend its motion, Ikard failed to make a summary judgment motion against Plaintiff Perea. We thus reverse the summary judgment motion granted against Plaintiff Perea and remand Plaintiff Perea's claims to the district court. We now consider the claims involving Plaintiff Ramos.

Plaintiff Ramos
The central issue as relates to Plaintiff Ramos is whether a general release procured by one joint tortfeasor releasing that tortfeasor from liability as well as "every other person, firm, or corporation" acts to release all unnamed joint tortfeasors from liability. We begin our discussion by outlining the respective positions of the parties and burdens of proof. We then determine whether tort or contract law governs the release.
*583 For the purposes of summary judgment, the initial burden was on Ikard to show the absence of a genuine issue of material fact, or that it was otherwise entitled as a matter of law to summary judgment in its favor. Goodman v. Brock, 83 N.M. 789, 792, 498 P.2d 676, 679 (1972). We hold that Ikard met its burden by attaching to the motion for summary judgment the copy of the release signed by Plaintiff Ramos, which showed on its face a release of Carlos Snyder and Maria Snyder and "every other person, firm, or corporation." Thus, we hold that that release sufficed to make a prima facie showing of no genuine issue of material fact. By its reliance on the release, Ikard in effect affirmatively set forth the release as an affirmative defense and, therefore, had the burden of proof as to the execution of the release. See SCRA 1986, 1-008(C) (Repl.1992); Foster v. Aetna Life Ins. Co., 352 Mo. 166, 176 S.W.2d 482, 485 (1943) (release is an affirmative defense and burden rests on party who pleads it to prove execution). Plaintiff Ramos, however, does not challenge the execution of the release or the adequacy of the consideration.
Plaintiff Ramos instead asserted two arguments below, one legal and the other factual. First, Plaintiff Ramos contends that with the abolition of joint and several liability, the reason for a settling tortfeasor to secure the release of all other tortfeasors no longer exists because each tortfeasor is now only liable for his or her own individual negligence or fault. Second, he attempted to raise a factual issue, arguing that he signed the release with the understanding that he was releasing only Carlos Snyder and Maria Snyder and that it was not his intent to release anyone else. These arguments constitute avoidance of the release. While the initial burden rested with Ikard to prove the execution of the release, the burden rested with Plaintiff Ramos to prove its invalidity. See Foster, 176 S.W.2d at 485; see also Maxfield v. Denver & Rio Grande W. R.R., 8 Utah 2d 183, 330 P.2d 1018, 1019 (1958) (one who attacks release has burden of proving its invalidity); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 49, at 335 (5th ed. 1984); 66 Am.Jur.2d Release § 60 (1973).
Thus, once Ikard made a prima facie showing of the execution of the release, the burden shifted to Plaintiff Ramos to either demonstrate a genuine factual issue or that Ikard was not entitled to summary judgment as a matter of law. See Goodman, 83 N.M. at 793, 498 P.2d at 680. We first examine Plaintiff Ramos's legal argument that a release of strangers is no longer viable in light of the abolition of joint and several liability. In making a determination as to that argument, we must determine whether tort or contract law governs the release.
At common law, each tortfeasor was subject to joint and several liability for damages arising from an injury with a release of one joint tortfeasor acting as a release for all other joint tortfeasors regardless of the terms of the release. Wilson v. Galt, 100 N.M. 227, 231, 668 P.2d 1104, 1108 (Ct.App.), cert. quashed, 100 N.M. 192, 668 P.2d 308 (1983); see McInnis v. Harley-Davidson Motor Co., 625 F.Supp. 943, 947 (D.R.I.1986). The adoption of the Uniform Contribution Among Tortfeasors Act, NMSA 1978, Sections 41-3-1 through -8 (Repl.Pamp.1989) (the Uniform Act), in 1947, gave joint tortfeasors the right of contribution from fellow tortfeasors. See Wilson, 100 N.M. at 231, 668 P.2d at 1108. Under the Uniform Act, a settling tortfeasor could protect himself or herself from further liability to the injured person and from other tortfeasors seeking contribution. Id. This could be done under Section 41-3-4 which permits the settling tortfeasor to secure a release not only for himself or herself but on behalf of all other tortfeasors when "the release so provides." The Uniform Act, however, did not change the common law rule of joint and several liability, and, in fact, joint and several liability was not finally abolished until 1982 with the decision of Bartlett v. New Mexico Welding Supply, Inc., 98 N.M. 152, 158, 646 P.2d 579, 585 (Ct.App.), cert. denied, 98 N.M. 336, 648 P.2d 794 (1982).
Plaintiff Ramos contends that with the abolition of joint and several liability, the reason for a settling tortfeasor to secure the release of all other tortfeasors no longer exists. See Wilson, 100 N.M. at 231, 668 *584 P.2d at 1108 (Bartlett effectively eliminates any basis for contribution among concurrent tortfeasors.). Thus, according to Plaintiff Ramos, now that joint and several liability and consequently liability for contribution have been abolished, a general release of "every other person, firm, or corporation" no longer has the significance it once had and therefore should not act to relieve non-settling tortfeasors. While we agree that the advent of comparative negligence and the abolition of joint and several liability reduced the need for a general release, we disagree that the settling parties are precluded from entering into a general release settling all claims and bringing the matter to an end.
Releases, because they are contractual in nature, are governed by the laws of contract. Ratzlaff v. Seven Bar Flying Serv., Inc., 98 N.M. 159, 162, 646 P.2d 586, 589 (Ct.App.), cert. denied, 98 N.M. 336, 648 P.2d 794 (1982). Thus, we conclude that the question of whether the general release clause contained in Plaintiff Ramos' release of Carlos Snyder and Maria Snyder discharging "every other person, firm, or corporation" is binding upon Plaintiff Ramos must be determined in accordance with contract principles.
Notwithstanding the demise of joint and several liability, there is good reason to permit parties to use the expansive language. For example, the settling tortfeasor may wish to protect himself from liability for indemnification should a right of action for that relief exist, and, as perhaps applicable to this case, avoid being brought into a suit should an injured party pursue an action against a non-settling tortfeasor. In sum, the settling tortfeasor may want to bring finality to the matter. In this regard, it is interesting to note that, notwithstanding her release, Maria Snyder actually appears as a Defendant in this action. The claim against her is not, however, before this Court, and we do not speculate as to its status. Having determined that contract law governs, we now consider Plaintiff Ramos' specific claims.
It appears that at least three approaches have been taken by states, like New Mexico, that have adopted the Uniform Act in deciding whether general releases bar the plaintiffs from proceeding against non-settling tortfeasors. These three approaches are discussed in Moore v. Missouri Pacific Railroad, 299 Ark. 232, 773 S.W.2d 78, 80-81 (1989). See generally Anne M. Payne, Annotation, Release of One Joint Tortfeasor as Discharging Liability of Others Under Uniform Contribution Among Tortfeasors Act and Other Statutes Expressly Governing Effect of Release, 6 A.L.R.5th 883 (1992). Some courts adopt the view that a general release clause is an automatic absolute bar to the plaintiffs' proceeding against unnamed tortfeasors (absolute bar rule). Moore, 773 S.W.2d at 80. Other jurisdictions have held that the release of one tortfeasor does not discharge other joint tortfeasors unless the tortfeasors are identified by name or are specifically identifiable from the face of the release (specific identity rule). Id. at 80-81. A third line of cases permits the evaluation of evidence beyond the four corners of the document so that the release will act as a general release if and to the extent that the parties so intended (intent rule). Id. at 80.
Given this state's preference to allow parties to contract as they may wish, see Castle v. McKnight, 116 N.M. 595, 599, 866 P.2d 323, 327 (1993) (Court expresses preference for allowing parties to contract as they wish); Estep v. State Farm Mutual Automobile Insurance Co., 103 N.M. 105, 112, 703 P.2d 882, 889 (1985) (Stowers, J., dissenting), coupled with long-standing pronouncements which favor settlements, see Ratzlaff, 98 N.M. at 163, 646 P.2d at 590, we hold that, absent an ambiguity or other reasons which might invalidate the contract, such as fraud, duress, or undue influence, see Moruzzi v. Federal Life & Casualty Co., 42 N.M. 35, 51-52, 75 P.2d 320, 330 (1938), the parties to a release are free to discharge not only the settling tortfeasor but all other unnamed tortfeasors as third party beneficiaries to the release. This rule gives efficacy to the right of the parties to freely contract while at the same time permitting a party to the release to seek relief from the release for any of the reasons permitted by law.
Applying this rule to the three approaches mentioned above, we first reject the specific *585 identity rule outright as being contrary to principles of statutory construction adhered to in this state. For example, in Bjork v. Chrysler Corp., 702 P.2d 146, 163 (Wyo.1985), a case relied on by Plaintiff Ramos and cited in Moore, 773 S.W.2d at 81, the Wyoming Supreme Court adopted the specific identity rule holding that language in the Uniform Act stating that a release does not discharge other tortfeasors "`unless its terms so provide'" is to be construed narrowly. The court reasoned that the quoted phrase in the statute "compels the releasor to name or otherwise specifically identify the released tortfeasors in order that the intent of the parties be fulfilled." Bjork, 702 P.2d at 163. We, however, determine that such interpretation not only frustrates the parties' right to generally release all joint tortfeasors, but also ignores the plain language of the equivalent phrase in New Mexico's version of the Uniform Act, "unless the release so provides[,]" and therefore, reject the Bjork approach. See § 41-3-4. Parties are free, of course, to specifically identify those tortfeasors they want to release, instead of using a general release clause.
Addressing the absolute bar rule, a general release clause would, of course, have the effect of an absolute bar if there were no contractual impediments and if the language reflects the parties' intent. However, if, for example, an ambiguity issue is raised reflecting that the language agreed upon by the parties meant something other than generally releasing all joint tortfeasors, the general release clause would not serve as an automatic bar.
In Moore, 773 S.W.2d at 80, the Arkansas Supreme Court, citing Johnson v. City of Las Cruces, 86 N.M. 196, 521 P.2d 1037 (Ct.App. 1974), characterized New Mexico as a state that follows the absolute bar approach. This description was probably correct at the time Moore was decided if one looks solely to Johnson because this Court in Johnson relied on the four corners approach to contract interpretation, limiting interpretation to the plain meaning of the words in the contract. Id. at 197, 521 P.2d at 1038. Johnson, however, must now be read in light of subsequent case law, which we now discuss.
Addressing the concern that written language is not always precise and often is subject to multiple interpretations, recent developments in case law in this state reflect a more lenient approach to dealing with ambiguity issues, allowing the court to look beyond the written words of a contract to determine the parties' intent. See Mark V, Inc. v. Mellekas, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993); C.R. Anthony Co. v. Loretto Mall Partners, 112 N.M. 504, 508-09, 817 P.2d 238, 242-43 (1991). Thus, if an issue regarding ambiguous language is properly raised, the court would be entitled to first review extrinsic evidence to determine whether an ambiguity exists and, if an ambiguity is found, then to determine the true intent of the parties by examining all the circumstances surrounding execution of the ambiguous agreement. Mark V, Inc., 114 N.M. at 781, 845 P.2d at 1235.
This leads us to the third approach, the intent approach. Applying our recent cases on contract interpretation to a general release clause, the intent rule probably comes closest to reflecting the approach our courts should take, recognizing, however, that an absolute bar will be presumed to be the intent of the parties to a general release unless an ambiguity is shown to exist by extrinsic evidence. We believe this to be consistent with the reasoning in both Mark V, Inc. and C.R. Anthony Co. If an ambiguity is shown, the parties' intent will be examined further with the clause to be interpreted according to the parties' original intent.
After the motion for summary judgment was made, Plaintiff Ramos moved to reform the release because, as he stated in a later affidavit, he was offered $4000 "for a release of Carlos Snyder and Maria Snyder only." (Emphasis added.) Plaintiff Ramos failed, however, to argue that the language in the general release clause was actually ambiguous or vague.
An ambiguity argument is a very different argument than the reformation argument Plaintiff Ramos offered. Had Plaintiff Ramos made a proper ambiguity argument, it would have prompted, first, an inquiry to determine whether there was an ambiguity in the general release clause, with extrinsic *586 evidence allowed to aid in the determination, and second, if found to be ambiguous, an inquiry to determine the parties' true intent of the meaning to be given to the clause. See Mark V, Inc., 114 N.M. at 781, 845 P.2d at 1235.
What Plaintiff Ramos attempted to do, however, was to reform his release to take out language to which he had originally consented when he did not agree with the interpretation the language was being given. Reformation of a contract is allowed if by mutual mistake, or mistake by one party and fraud or other inequitable conduct by the other, the contract does not express the parties' true intent. Drink, Inc. v. Martinez, 89 N.M. 662, 664, 556 P.2d 348, 350 (1976). Neither of these grounds was raised below. Instead, Plaintiff Ramos argued that he did not intend to release anyone other than Carlos Snyder and Maria Snyder. Reformation of a contract is not allowed, except for the reasons mentioned above, because it is the intention which finds expression in the language used and not the party's secret or undisclosed intent that controls. See Southern Union Exploration Co. v. Wynn Exploration Co., 95 N.M. 594, 597, 624 P.2d 536, 539 (Ct.App.) ("The controlling intent of a party is his expressed assent and not his secret or undisclosed intent."), cert. denied, 95 N.M. 593, 624 P.2d 535 (1981), and 455 U.S. 920, 102 S.Ct. 1276, 71 L.Ed.2d 461 (1982); Crawford Chevrolet, Inc. v. National Hole-in-One Ass'n, 113 N.M. 519, 522 n. 3, 828 P.2d 952, 955 n. 3 (1992).
Notwithstanding Plaintiff Ramos' failure to raise below an ambiguity issue, he does make that argument on appeal. While it is true that a party ordinarily can not argue issues on appeal that were not presented to the trial court, see Woolwine v. Furr's, Inc., 106 N.M. 492, 496-97, 745 P.2d 717, 721-22 (Ct.App.1987), we have held that a different rule applies when the party opposing summary judgment attempts to call to the attention of the appellate court facts in the record not specifically brought to the attention of the district court. Phifer v. Herbert, 115 N.M. 135, 138, 848 P.2d 5, 8 (Ct. App.1993). Plaintiff Ramos in his brief in chief does make an argument that the general clause in the release was ambiguous. Although we consider Plaintiff Ramos' ambiguity argument, we hold that he failed to meet his burden of showing any extrinsic evidence that would raise an ambiguity issue.
It may have been possible for Plaintiff Ramos to raise an ambiguity issue by showing through extrinsic evidence that the parties to the release initially intended only to cover the settling tortfeasors. For example, Plaintiff Ramos might have raised that issue by showing that based on the conduct leading up to the execution of the release, the parties could not have intended that the release cover anyone other than the settling tortfeasors or persons or entities related to the settling tortfeasors. Plaintiff Ramos made no such showing. Instead, Plaintiff Ramos attempted to raise a factual issue as to what was the intent in his own mind, which according to Southern Union Exploration Co. and Crawford Chevrolet, Inc., is not the issue. Having been given 30 days by the district court to come up with evidence to prove any ambiguity, and having completely failed to do so, summary judgment against Plaintiff Ramos was proper.
As we said earlier, the party seeking avoidance of a release carries the burden of proving its invalidity. The rationale for that rule is particularly appropriate here. Where the words of the release appear clear, placing the burden on Plaintiff Ramos is consistent with our body of law in such cases. Additionally, the party seeking to avoid the release has better access to the many facts concerning intent.
We hold that the motion to reform the release was properly denied and conclude with respect to Plaintiff Ramos that there was no ambiguity shown as to the terms of the contract. We consequently determine that Plaintiff Ramos' general release clause prevented him from initiating suit against Ikard.

CONCLUSION
For the reasons stated, summary judgment against Plaintiff Ramos is affirmed, *587 with the motion to reform properly denied. The summary judgment against Plaintiff Perea is reversed. The case is remanded to the district court for trial on the merits in the case of Plaintiff Perea. Plaintiff Perea shall recover his costs on appeal.
IT IS SO ORDERED.
PICKARD and BLACK, JJ., concur.