636 P.2d 284

Gilbert SEGURA, Plaintiff-Appellee,

v.

MOLYCORP, INC., Defendant-Appellant.

No. 13314.

Supreme Court of New Mexico.

Nov. 9, 1981.

Charles S. Solomon, Santa Fe, for defendant-appellant.

Thomas A. Simons, IV, Santa Fe, for plaintiff-appellee.

## OPINION

PHILIP R. ASHBY, District Judge.

This appeal presents a question of first impression in New Mexico. May an employee privately contract with his employer for disability benefits in addition to those provided by the Workmen's Compensation Act? We hold that he can and affirm.

The evidence most favorable to the verdict is: In January 1974, appellee Segura, during the course of his employment by appellant Molycorp, suffered a back injury requiring an operation. Connecticut General Life Insurance Corporation ("CG"), Molycorp's disability insurer, paid the costs of the operation.

In April 1974, certain supervisory employees of Molycorp talked to Segura about returning to work in a supervisory capacity. Segura agreed, upon condition that he not be required to perform heavy manual labor involving heavy lifting or twisting and that in the event of disability, he would be eligible for long-term disability benefits of one-half his salary in addition to Social Security benefits. This arrangement was confirmed by the personnel manager for Molycorp, and ratified in writing by the President of Molycorp. Segura returned to work for Molycorp as a supervisor in reliance on these specified conditions.

In 1977, at the direction of his supervisor, Segura began to perform heavy manual labor and, by November 1977, experienced such pain that he was forced to leave work. He was certified by Molycorp to be totally and permanently disabled as a result of his work-related injury. At the time of the injury, Segura was earning $1,820.00 per month in salary.

Beginning in June 1978, Segura received benefits, paid by CG, of $132.07 for the period of April 30, 1978—June 30, 1978. Segura then engaged in discussions with representatives of Molycorp, who agreed that he should receive, as disability, 50% of his salary plus Social Security benefits. After further discussions, the disability payments were increased to $347.80 per month. Segura then made a demand upon Molycorp and CG for the full amount claimed ($910.00 per month), which demand was not honored. This suit followed.

Segura's amended complaint alleged breach of contract, tort and fraudulent misrepresentation. He claimed as damages $910.00 per month from April 30, 1978, until he reached sixty-five years of age, and punitive damages of $50,000.00.

Molycorp claimed: (1) no contract existed for payment of disability benefits; (2) the employees of Molycorp had no authority to enter into the alleged agreement; (3) Segura was entitled to workmen's compensation benefits only; and, (4) the sole and exclusive remedy of Segura was under the workmen's compensation laws.

Prior to trial, Molycorp's counterclaims based on Segura's refusal and failure to apply for workmen's compensation benefits as an offset, were dismissed. The court also denied Molycorp's motions to dismiss for failure to join as indispensable parties Molycorp's workmen's compensation insurance carriers.

The case was submitted to the jury on the form of general verdict with a special interrogatory to determine the sum equal to 50% of Segura's applicable monthly salary. The jury found for Segura, awarding

$9,058.53 in damages plus $910.00 per month, as claimed.

On appeal, Molycorp claims error for the following reasons:

1. Segura's exclusive remedy was a workmen's compensation claim. Therefore, the court erred by allowing this case to go to a jury as either a common law tort or a contract claim.

2. Segura failed to meet the criteria for disability in CG's policy and, therefore, was not disabled under the terms of such policy.

3. There was mutual mistake of fact in the intentions of Segura and Molycorp with respect to the alleged April 1974 agreement and, therefore, no agreement was consummated.

4. There was no evidence of the April 1974 agreement.

5. Molycorp was denied the right to present its theory of the case.

6. The existence of a contract was a matter of law for the Court, and error was committed by submitting that issue to the jury.

7. There was no evidence to show that Molycorp's employees had authority to enter into the April 1974 agreement.

8. The court erred in denying summary judgment on Molycorp's counterclaim because such denial was based on bias by the court.

## I. WORKMEN'S COMPENSATION vs. COMMON LAW ACTION

Molycorp asserts that the provisions of the Workmen's Compensation Act (the Act), §§ 52–1–1 to 52–3–59, N.M.S.A. 1978, make that statutory remedy the only cause of action available to Segura. If this argument has merit, the trial court was obligated to dismiss the complaint with prejudice. *Security Insurance Co. of Hartford v. Chapman*, 88 N.M. 292, 540 P.2d 222 (1975); *Anaya v. City of Santa Fe*, 80 N.M. 54, 451 P.2d 303 (1969).

Section 52–1–6(D) states:

[C]ompliance with the provisions of the Workmen's Compensation Act * * * shall be, and construed to be, a surrender by the employer and the employee of their rights to any other method, form or amount of compensation or determination thereof, or to any cause of action at law, suit in equity or statutory or common-law right to remedy or proceeding whatever for or on account of such personal injuries or death of such employee than as provided in the Workmen's Compensation Act, and shall bind the employee himself * * *.

We have previously held that once the Act provides a remedy, it is exclusive and the employee has no right to bring an action in common-law negligence against his employer. *Galles Chevrolet Co. v. Chaney*, 92 N.M. 618, 593 P.2d 59 (1979). However, Segura claims neither workmen's compensation benefits nor common-law negligence. He is claiming, under various theories, a breach by Molycorp of an agreement to pay certain benefits in the event of total disability, as a condition of returning to work as a supervisory employee of Molycorp.

Although there is no New Mexico authority directly on point, the authority from other jurisdictions may be summarized as follows. The exclusive remedy provisions in workmen's compensation laws, such as Section 52–1–6(D), *supra*, do not prevent an employer and an employee from entering into a private agreement for contractual disability benefits greater than those benefits provided under the legislative workmen's compensation scheme. The rule is set forth in 4 A. Larson, Workmen's Compensation Law, § 97.53 (1977) as follows:

It is possible to imagine a number of troublesome legal questions that might emerge from the type of contract in which the employer agrees to pay, say $90 a week benefits instead of the $70 specified by statute. One cardinal principle, however, should ordinarily settle most such questions. That principle is the simple proposition that the contractual excess is not Workmen's Compensation. It performs the same functions, and is payable under the same general conditions, but legally it is nothing more than

the fruit of a private agreement to pay a sum of money on specified conditions. The provisions of a compensation act may be incorporated into the agreement by reference, but the operative force and *the ultimate legal character of the arrangement remain that of private contract.* (Emphasis added.)

*Accord: Nelson v. Victory Electric Works, Inc.,* 227 F.Supp. 404 (D.C.Md.1964); *City Council of Augusta v. Young,* 218 Ga. 346, 127 S.E.2d 904 (1962); *Board of Ed., etc. v. Chicago Teachers Union,* 82 Ill.App.3d 354, 37 Ill.Dec. 639, 402 N.E.2d 641 (1980) and *Heck v. Geo. A. Hormel Co.,* 260 N.W.2d 421 (Iowa, 1977). The Supreme Court of Iowa, in *Heck, supra,* was confronted with the same basic fact pattern presented here and, in concluding that such actions are not within the purview of the Workmen's Compensation Acts, said:

The fact that an employee's rights against an employer for industrial accidents lie exclusively within the provisions of Chapter 85 *does not prevent the parties from agreeing by contract to augment the benefits* there conferred. The present action is not a claim in derogation of the Workers' Compensation Act; it is a claim to enforce a contract similar to an insurance contract. (Emphasis added.)

260 N.W.2d at 423.

Molycorp has cited New Mexico cases in support of its argument. These cases are not determinative. In *Beal v. Southern Union Gas Company,* 62 N.M. 38, 304 P.2d 566 (1956), the appellant asserted a third-party claim against the employer for contribution. The appellant's negligence had concurred with the employer's negligence to injure the employee. The trial court dismissed the third-party claim, and we affirmed, holding that the Workmen's Compensation Act immunized the employer from all claims arising from the injury except those covered by the Act.

The limitation of employer's liability for injuries sustained by an employee covered by the Workmen's Compensation Act covers all instances where that injury is sought to be made the basis for further

and additional liability by the employee * * * and indirect liability for such injury is also foreclosed both by the terms of the act and because the employer's liability for such injury is not in tort.

*Id.* at 41–42, 304 P.2d 566.

*Beal* is not controlling here. Segura's claim is based on the alleged contract on representation regarding disability benefits, not on the disabling injury itself. In other words, the basis for Molycorp's liability is not Segura's injuries but its contractual obligation to pay disability benefits.

Molycorp cites *Gulf Oil Corp. v. Rota-Cone Field Operating Co.,* 84 N.M. 483, 505 P.2d 78 (Ct.App.1972), *cert. denied,* 85 N.M. 636, 515 P.2d 640 (1973), for the proposition that an employer is not subject to liability in addition to workmen's compensation even where the employer voluntarily entered into an indemnification contract. In *Gulf Oil,* a third party tortfeasor sued by the deceased's estate claimed a contractual indemnification right against the employer who was obligated to pay workmen's compensation death benefits to the estate. The Court of Appeals ruled that the indemnity contract was void as against public policy because it subjected the employer to liability over and above that imposed under the workmen's compensation laws. We originally overruled the Court of Appeals, but withdrew the opinion and quashed the Writ of Certiorari because it was not timely filed. *Gulf Oil* has been criticized elsewhere. *See Gordon H. Ball, Inc. v. Oregon Erecting Co.,* 273 Or. 179, 539 P.2d 1059 (1975); 2A *Larson, supra* at § 76.41. In any event, nothing in *Gulf Oil* indicates or concludes that a contract for additional benefits between employer and employee is void.

Molycorp argues that the policy behind the Act compels a result favorable to its view. Citing *Sanchez v. Hill Lines,* 123 F.Supp. 42 (1954), it asserts that the purpose of the workmen's compensation laws is to provide not only an employee remedy which is both expeditious and independent of proof of fault, but also an employer's liability which is limited and determinate. These purposes are not impaired by Segu-

ra's agreement with Molycorp. The contractual liability is both limited and determinate. Molycorp argues elsewhere that there was no contract, but the jury found otherwise.

Accordingly, we hold that an employee may privately contract with his employer for disability benefits in addition to those provided by the Workmen's Compensation Act.

## II.  TOTAL DISABILITY

Molycorp contends that Segura was not "disabled" as defined in the insurance policy. Since the policy was not introduced into evidence, we cannot consider the issue. Further, our review of the record shows abundant evidence to support a jury finding of disability.

## III.  MUTUAL MISTAKE OF FACT

The record reveals more than sufficient evidence to support a jury finding that there was no mutual mistake of fact in the formation of the April 1974 agreement between Molycorp and Segura.

## IV.  AGREEMENT TO PAY 50% OF SALARY WITHOUT SOCIAL SECURITY OFFSET

■ Molycorp's basic contention is that the trial court erred in allowing Segura to testify as to oral statements of Mr. Riggsbee, now deceased. The claim is that such statements are hearsay and not admissable to contest a written statement attributable to Riggsbee. Evidence Rule 801(d), N.M.S.A.1978 controls. The Riggsbee oral statement is *not* hearsay because it was an admission of the agent of a party-opponent under Rule 801(d)(2)(D). The record reflects sufficient evidence to justify the jury's finding that there was a contract.

## V.  INSTRUCTIONS—THEORY OF CASE

■ Molycorp claims error by the refusal to grant certain Requested Instructions relating to such diverse issues as agency, ratification and definition of disability. Our review of the Instructions submitted to the jury indicates that each of these issues was properly included in the totality of the instructions. In *Hole v. Womack*, 75 N.M. 522, 407 P.2d 362 (1965), we held that where a party's case is adequately presented to the jury, such party is not entitled to repetitious instructions belaboring the point. The court's instructions were adequate to present both party's theories of the case. Accordingly Molycorp's claim must fail.

## VI.  EXISTENCE OF CONTRACT— FACT OR LAW

A. *Determination of Existence and Terms of Contract.*

■ Molycorp contends the court erred by failing to find as a matter of law the existence and terms of a contract. In support of this contention, Molycorp cites *Holland v. Lawless*, 95 N.M. 490, 623 P.2d 1004 (Ct.App.) cert. denied, 95 N.M. 593, 624 P.2d 535 (1981), a case involving, *inter alia*, a dispute over whether an attorney-client relationship existed. The court held that the existence of a contract establishing such a relationship is generally an issue and question of law. However, that narrow holding cannot be enlarged to change the well-settled rule that when the existence of a contract is at issue and the evidence is conflicting or admits of more than one inference, it is for the jury to determine whether the contract did in fact exist. *Pre-fit Door, Inc. v. Dor-Ways, Inc.*, 13 Ariz.App. 438, 477 P.2d 557 (1970); *see also, Kirchner v. Laughlin*, 4 N.M. 386, 17 P. 132 (1888).

■ It is the duty of the court to interpret the terms of a contract when these terms have been clearly established but when the terms of a contract are in controversy, it is for the jury to determine the terms and it is not the province of the court to instruct the jury what the terms are. 17A C.J.S. Contracts, § 611(a) (1963).

The central dispute in this case is whether a contract existed and, if so, its terms. The evidence was sufficient to establish an oral contract. Therefore, the court properly submitted the issue to the jury.

### B. Refusing Defendant's Special Interrogatories

Molycorp argues error for the court to refuse to submit its special interrogatories to be used to allow the jury to indicate whether a contract existed or whether negligent misrepresentation had occurred, thus allowing the court to interpret the contract and determine the damages. As set forth above, it is for the jury to determine both the existence of a contract and its terms when there is a dispute.

The trial court was under no obligation to submit special interrogatories, despite the language of Rule 49, N.M.R.Civ.P. N.M.S.A.1978. Broad discretion is allowed to determine whether to submit special interrogatories. *Madsen v. Read*, 58 N.M. 567, 273 P.2d 845 (1954). The purpose of special interrogatories is to aid the jury, not to cross-examine it. *Landers v. Atchison, Topeka & Santa Fe Railway Co.*, 73 N.M. 131, 386 P.2d 46 (1963). And it is within the sound discretion of the trial judge, based on the facts and circumstances involved in the particular case, to determine whether the matter shall be submitted to the jury on general verdicts or special interrogatories, or both. *Wright v. Atchison, Topeka & Santa Fe Railway Co.*, 64 N.M. 29, 323 P.2d 286 (1958). We hold that such discretion was not abused.

Molycorp also contends that because only a general verdict was submitted, it is impossible to determine whether the verdict was based on the contract action or the tort action. It continues this argument by alleging error because the two theories have different measures of damages and failure to require Plaintiff to elect his remedy prejudiced Molycorp. Our decision in *Armijo v. National Surety Co.*, 58 N.M. 166, 268 P.2d 339 (1954), cited by Molycorp, fails to support this argument. In *Armijo* we found error because the jury returned a judgment giving Plaintiff multiple damages, despite instructions that it should only make one award of compensatory damages.

Here, there was no judgment for multiple damages. Further, election of remedies is only required when the theories are inconsistent, which they are not in this case. To pursue either a breach of contract theory or a tort theory of negligent misrepresentation requires an affirmation of the contract. If there was error in failing to instruct the jury to confine itself to either a damage award based on the contract theory or a damage award based on the tort theory of negligent misrepresentation, it was harmless error because no judgment for multiple damages was awarded by the jury.

## VII. AGENCY AND RATIFICATION

Molycorp next contends that there was no evidence of agency and no evidence of ratification. The argument is that none of the Molycorp employees had authority to negotiate long-term disability benefits or to change the terms of the company's disability package. Segura, on the other hand, argues that Mr. Dewey, the Molycorp General Manager, acted as Molycorp's agent in negotiating the long-term disability benefits, that Segura reasonably relied on the representations made by Dewey and that Molycorp ratified the acts of its agent by written confirmation of the agreement made between Dewey and Plaintiff.

The record indicates that Dewey was perceived by Segura as having authority to act on behalf of Molycorp. It is essential that an agent have actual authority, express or implied; however, his authority can be apparent or ostensible and still bind the principal. Apparent authority can be defined as "that authority which a principal holds his agent out as possessing or permits him to exercise or to represent himself as possessing, under such circumstances as to estop the principal from denying its existence." 2A C.J.S. Agency § 157(a) (1972). *Vickers v. North American Land Developments, Inc.*, 94 N.M. 65, 607 P.2d 603 (1980). The record also contains Plaintiff's Exhibit 2, which contains the contract in the form alleged by Plaintiff and which indicates it is from the President of Molycorp. Dewey acknowledged that the only person with authority to alter the long-term disability benefits was the Molycorp Presi-

dent. This is clearly sufficient to form the basis of a jury finding that the agreement, as understood by Segura, was ratified by Molycorp.

 There is sufficient evidence in the record to support a finding of agency.

The fact that there may have been contrary evidence introduced at trial capable of supporting a different verdict from that rendered by the trial court, does not permit the Supreme Court to weigh the evidence. All disputed facts are resolved in favor of the successful party, and all reasonable inferences indulged in support of the verdict.

*Kerr v. Schwartz*, 82 N.M. 63, 65, 475 P.2d 457, 459 (1970).

## VIII. DENIAL OF SUMMARY JUDGMENT ON COUNTERCLAIM

A. *Denial of Defendant's Motion for Summary Judgment on Its Counterclaim.*

Molycorp counterclaimed, alleging that despite company policy to the contrary, Segura failed to file for workmen's compensation benefits when he became disabled in November 1977 and, therefore, Molycorp did not receive an offset for these benefits against the full salary paid to Segura during the six months covered by short term disability insurance. Prior to trial, Molycorp moved for summary judgment on this counterclaim. The trial court denied the motion.

A motion for summary judgment is only properly granted when there is no genuine issue of material fact. N.M.R.Civ.P. 56(c), N.M.S.A.1978. A party opposing the motion is to be given the benefit of all reasonable doubts in determining whether a genuine issue of fact exists and if there is a reasonable doubt, the motion for summary judgment is properly denied. *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972).

We hold that Molycorp failed to meet its burden of showing an absence of any genuine issues of material fact. Denial of the motion was, therefore, proper.

B. *Bias or Prejudice by Trial Judge.*

The argument of Molycorp that the denial of its motion for summary judgment was based on a bias or prejudice by Judge Caldwell against Molycorp is totally unsupported in the record. Judge Caldwell's comments quoted by Molycorp can in no way be construed as evidencing prejudice or bias that would require reversal. This argument approaches sham, with no merit whatsoever.

Affirmed.

IT IS SO ORDERED.

EASLEY, C. J., and RIORDAN, J., concur.