845 P.2d 1232

**MARK V, INC., a New Mexico corporation, Plaintiff–Appellant,**

v.

**Cynthia Hibbard MELLEKAS, personal representative of the estate of George T. Mellekas, deceased, Defendant–Appellee.**

No. 20275.

Supreme Court of New Mexico.

Jan. 5, 1993.

ker's commission. The case affords an opportunity to review and apply the principles in our recent opinion in *C.R. Anthony Co. v. Loretto Mall Partners,* 112 N.M. 504, 817 P.2d 238 (1991). Applying *C.R. Anthony,* we discuss the appropriate methods for a trial court to use in determining whether a contract contains ambiguous terms and in resolving any ambiguities thus discovered.

In this case, the parties to an exclusive-right-to-sell listing agreement signed an addendum to the agreement purporting to "cancel" all obligations between the parties. The real estate agency sued to recover a commission allegedly earned before the addendum was signed, but the trial court held that the addendum canceled the property owner's obligation to pay the commission and awarded her summary judgment. The real estate agency appeals, contending that the court should have considered extrinsic evidence of the circumstances surrounding execution of the addendum in making its decision and should have found the addendum ambiguous. We hold that the district court erred by failing to consider evidence submitted by the real estate agency to show that the meaning of the contract was unclear. Examining the documents ourselves, we also hold that the contract is ambiguous. We therefore reverse and remand for trial to resolve the ambiguities.

## I.

On May 3, 1989, George and Cynthia Mellekas, the property owners, entered into a contract with Mark V, Inc., the real estate agency, giving Mark V the exclusive right to sell their residence.[1] The agreement called for Mark V to list the residence with the Albuquerque Board of Realtors Multiple Listing Service at an asking price of $292,200. Mellekas promised to pay Mark V a six percent commission on the sale if, prior to termination of the contract, Mark V secured a purchaser for the proper-

Charles R. Thompson, Clara Ann Bowler, Albuquerque, for plaintiff-appellant.

J. Edward Hollington, Albuquerque, for defendant-appellee.

## OPINION

MONTGOMERY, Justice.

This is a dispute between a real estate agency and a property owner over a bro-

---

1. George Mellekas, the original defendant, died shortly after Mark V filed the complaint. Cynthia Mellekas, as executor of his estate, was substituted as the defendant. In this opinion, we shall refer to both Mr. and Mrs. Mellekas and to each of them individually as "Mellekas."

779

ty at the asking price and upon Mellekas's terms or for any other acceptable price and terms. The agreement set out Mark V's obligation as follows: "In consideration of the above, Broker agrees to use diligence in procuring a purchaser." The agreement provided that it would "continue irrevocably" until October 31, 1989.

On July 18, 1989, Mark V found a buyer who was willing to satisfy all of Mellekas's terms. The buyer made a written offer, and a Mark V sales agent presented the offer to Mellekas. On the following day, George Mellekas rejected the offer by signing his name under a handwritten notation appearing on each page of the offer, reading: "Rejected 7–19–89 9 AM."

Fifteen minutes after the offer was rejected, George Mellekas and Mark V executed a "Listing Agreement Addendum" ("the addendum") on a standard form prepared by the Albuquerque Board of Realtors. The form consisted of five paragraphs that could be completed and signed by the contracting parties. Paragraphs 1, 2, and 5 were left blank. Paragraph 3, entitled "Withdrawal from the Multiple Listing Service of the Albuquerque Board of Realtors," was crossed out with an "X," presumably because the printed provisions of that paragraph stated that it did not cancel the exclusive right to sell granted to Mark V in the listing agreement. Paragraph 4 of the addendum, entitled "Cancellation Agreement," was the only part of the addendum signed by Mellekas and representatives of Mark V. The Cancellation Agreement provided: "The above mentioned Listing Agreement is hereby terminated effective this date and all obligations agreed to are hereby canceled...." It further provided that if at any time within the next 365 days the property should be sold to any person who had been shown the property during the term of Mark V's listing, Mark V would be entitled to a six percent commission on the sale.

On April 4, 1990, Mark V sued Mellekas for the commission it claimed it had earned by submitting an offer from a qualified buyer willing to meet the price and terms established in the exclusive-right-to-sell agreement. Mellekas moved for summary judgment, arguing that the language in the addendum, "all obligations agreed to are hereby canceled," effectively canceled Mellekas's contractual obligation to pay the commission. Mark V opposed the motion by submitting the deposition of the Mark V supervisor who had executed the addendum to show that Mark V only intended to remove the contract from the multiple listing service as required by the Albuquerque Board of Realtors, that the purpose of the addendum was to cancel all future obligations of Mark V to market the property, and that at the time George Mellekas signed the addendum the supervisor informed him that Mark V was entitled to the commission already earned.

Mark V asked the court to consider evidence of the circumstances surrounding execution of the addendum in making the threshold determination as to whether or not it was ambiguous. The trial court ruled that the evidence presented by Mark V was only admissible if the addendum was ambiguous. The court further ruled that the language of the document was unambiguous, declined to consider the extrinsic evidence offered to aid in its interpretation, and granted summary judgment in favor of Mellekas.

Mark V contends on appeal that the trial court erred in ruling that the listing agreement was unambiguous based on the "four corners" of the document; that even if the addendum was unambiguous, Mark V was entitled to a full evidentiary hearing; and that the court erred in finding that the addendum was effective and enforceable, because any waiver of its commission was ineffective as a matter of law for lack of consideration. Mark V's first two contentions turn on the same point of law and will be disposed of together in our discussion. We agree that the trial court erred in finding that the addendum was unambiguous and in failing to consider extrinsic evidence of the circumstances surrounding its execu-

tion in making this determination. We do not agree, however, that a waiver by Mark V of its commission, already earned, would be unenforceable as a matter of law.

## II.

■ We turn first to the issue of whether the court properly found the agreement to be unambiguous. In coming to its decision, the district court apparently relied solely on the face or the "four corners" of the document. *See, e.g., Clark v. Sideris,* 99 N.M. 209, 212–13, 656 P.2d 872, 875–76 (1982) (court will not look beyond the four corners of the document unless it is ambiguous), *overruled by implication in C.R. Anthony,* 112 N.M. at 509, 817 P.2d at 243. This was error.

This Court abandoned the "plain-meaning" or "four-corners" standard, under which ambiguity is determined by the court without consideration of any evidence outside the contract itself to explain the purposes or context of the contract, in *C.R. Anthony,* 112 N.M. at 508–09, 817 P.2d at 242–43. In *C.R. Anthony* we followed the modern trend and adopted the contextual approach to contract interpretation, in recognition of "the difficulty of ascribing meaning and content to terms and expressions in the absence of contextual understanding." *Id.* at 508, 817 P.2d at 242. *See also* Restatement (Second) of Contracts § 214(c) cmt. b (1979) ("Even though words seem on their face to have only a single possible meaning, other meanings often appear when the circumstances are disclosed."). Without a full examination of the circumstances surrounding the making of the agreement, ambiguity or lack thereof often cannot properly be discerned.

Thus, we held in *C.R. Anthony* that even if the language of the contract appears to be clear and unambiguous, "a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance," in order to decide whether the meaning of a term or expression contained in the agreement is actually unclear. 112 N.M. at 508–09, 817 P.2d at 242–43. The court is no longer restricted to the bare words of the agreement in interpreting the intent of the parties to a contract, but may also consider the context in which the agreement was made to determine whether the party's words are ambiguous.

■ New Mexico law, then, allows the court to consider extrinsic evidence to make a preliminary finding on the question of ambiguity. The present law in this state concerning the interpretation of ambiguous or unclear language in written agreements may be summarized as follows: An ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity. *C.R. Anthony,* 112 N.M. at 509 n. 2, 817 P.2d at 243 n. 2. The question whether an agreement contains an ambiguity is a matter of law to be decided by the trial court. *Levenson v. Mobley,* 106 N.M. 399, 401, 744 P.2d 174, 176 (1987). The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear. *C.R. Anthony,* 112 N.M. at 508–09, 817 P.2d at 242–43. If the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law. *Id.* at 510, 817 P.2d at 244. If the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists. *Vickers v. North Am. Land Dev., Inc.,* 94 N.M. 65, 68, 607 P.2d 603, 606 (1980). At that point, if the proffered evidence of surrounding facts and circumstances is in dispute, turns on witness credibility, or is susceptible of conflicting inferences, the meaning must be resolved by the appropriate fact finder, *C.R. Anthony,* 112 N.M. at 510, 817 P.2d at 244.

■ Once the agreement is found to be ambiguous, the meaning to be assigned the unclear terms is a question of fact.

*Segura v. Molycorp, Inc.*, 97 N.M. 13, 18, 636 P.2d 284, 289 (1981). However, in the event the parties do not offer evidence of the facts and circumstances surrounding execution of the agreement and leading to conflicting interpretations as to its meaning, the court may resolve any ambiguity as a matter of law by interpreting the contract using accepted canons of contract construction and traditional rules of grammar and punctuation. *C.R. Anthony*, 112 N.M. at 510 n. 5, 817 P.2d at 244 n. 5. The factual issues, if any, presented by an ambiguity must be resolved by the jury (or by the judge as fact finder in the case of a bench trial) with the benefit of a full evidentiary hearing prior to deciding breach and damages. *Id.* at 510, 817 P.2d at 244. In order to determine the meaning of the ambiguous terms, the fact finder may consider extrinsic evidence of the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent. *American Bank of Commerce v. M & G Builders, Ltd.*, 92 N.M. 250, 252, 586 P.2d 1079, 1081 (1978). Evidence may be presented to the fact finder to aid in the interpretation of the agreement, but no evidence should be received when its purpose or effect is to contradict or vary the agreement's terms. *Maine v. Garvin*, 76 N.M. 546, 550–51, 417 P.2d 40, 43 (1966); *see also C.R. Anthony*, 112 N.M. at 509, 817 P.2d at 243.

■ In the present case, the district court determined that the contract was unambiguous as a matter of law. The trial court's conclusion of law is not binding on this Court, and upon *de novo* consideration of the documents presented below we reach a conclusion different from that of the trial court. *See, e.g., id.* at 510, 817 P.2d at 244 (citing *Whitehurst v. Rainbo Baking Co.*, 70 N.M. 468, 470, 374 P.2d 849, 850 (1962)).

■ A number of significant questions of intent and meaning arise from the parties' execution of the addendum. First, the addendum states that "all obligations agreed to are hereby canceled." Does the phrase include Mark V's commission or does it merely release Mark V from any further obligation to use diligence in procuring a purchaser? Mark V had allegedly brought a buyer to Mellekas and had thereby earned a commission of approximately $17,500.00. *See Hatch v. Strebeck*, 58 N.M. 824, 828, 277 P.2d 317, 320 (1954) ("[A] broker has earned ... his commission when he has procured a purchaser who is ready, able and willing to buy on the terms given to the agent by the owner.... [I]t is unnecessary that a binding contract be executed by the buyer and seller."). There was no evidence presented as to why Mark V would want to waive its right to this commission.

Additionally, the addendum provided that Mellekas's obligation to pay a commission if the property were sold to someone procured by Mark V would continue for 365 days from the date the addendum was signed. Why would Mark V release Mellekas from a commission already owed and yet retain this term in the contract? [2]

The district court, looking only to the face of the contract, ruled that the clear and unambiguous meaning of the phrase "all obligations are hereby canceled" was that all obligations of the parties, past and future, were rescinded. In his treatise on contracts, Professor Corbin discusses the problems presented by an agreement to cancel or rescind a contract after one party has performed. *See* 5A Arthur L. Corbin, *Corbin on Contracts* §§ 1229, 1236 (1964). The question may arise, as it does in this case, "Does the rescission operate only in futuro, making the contract inoperative as

---

**2.** We do not hold that this provision necessarily means that Mark V preserved its right to a commission. Indeed a plausible argument can be made that, in view of Mellekas's apparent change of mind about selling their residence, Mark V was willing to relinquish its right to a commission so long as it retained that right in the future if, within a year, Mellekas again changed their mind and sold the property to someone previously introduced to them by the agency. This, however, is the kind of ambiguity that cannot be resolved on summary judgment; a full evidentiary hearing (a trial) is necessary to determine just what the parties *did* intend.

to matters yet unperformed, but leaving it still operative as to performances fully or defectively rendered under it?" *Id.* § 1236, at 538. Corbin notes that the common use of the term "cancellation" is not so uniform as to be decisive in interpretation, *id.* § 1236, at 538–39, and that the exercise of the power to "cancel" a contract, by reason of breach or nonperformance, generally does not discharge the right to an agreed price of a performance already rendered. *Id.* § 1229, at 509.

The Uniform Commercial Code, for example, contains the following definitions:

> "Termination" occurs when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach. On "termination" *all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives.*

> "Cancellation" occurs when either party puts an end to the contract for breach by the other and *its effect is the same as that of "termination"* except that the canceling party also retains any remedy for breach of the whole contract or any unperformed balance.

NMSA 1978, § 55–2–106(3) to (4) (emphasis added). Of course, the Uniform Commercial Code is not applicable in this case, but this example provides a reasonable interpretation of the meaning of "cancellation" that differs from the district court's interpretation of that term.

A full and complete mutual release from all obligations under the contract quite possibly may have been the actual effect intended by the parties to this contract, and if so their contract should be interpreted and enforced accordingly. The question whether the parties have agreed to a complete discharge of any right to compensatory damages for past as well as future nonperformance can only be answered af-

ter a careful interpretation of the terms of the agreement in light of the circumstances that surrounded its making; until this is done the intended meaning of the addendum remains unclear. *See* Corbin, *supra,* § 1236, at 538. We thus hold that the phrase "all obligations are hereby canceled" is ambiguous, because it is reasonably and fairly susceptible of different constructions. The district court having ruled to the contrary, its summary judgment in favor of Mellekas must be reversed.

### III.

■ We turn now to Mark V's argument that the addendum was ineffective as a discharge of Mellekas's obligation to pay a commission.[3] Mark V contends that there was no consideration for the discharge of Mellekas's duties under the contract after Mark V had fully performed and that the addendum is therefore unenforceable as a matter of law. Mellekas cites *Epstein v. Waas,* 28 N.M. 608, 216 P. 506 (1923), for the proposition that a mutual release is enforceable only when each party to an executory contract has not fully performed. Mark V argues that its right to a commission had ripened through full performance and that Mellekas's unilateral release lacked consideration.

We find nothing in *Epstein* to support this argument. *Epstein* simply holds that an executory contract may be rescinded by the parties' mutual consent, the agreement by one party to release the other being sufficient consideration for the other party's release of the first party. *Id.* at 612, 216 P. at 508. There is nothing to prevent one party from releasing the other, even if the other has fully performed, if the first party's release is supported by consideration. *See* Restatement (Second) of Contracts § 273 (1979) (obligee's manifestation of assent to a discharge is not effective unless, inter alia, it is made for consider-

---

**3.** Although we need not reach this issue, given our holding in Part II of this opinion, we do so in order to provide guidance to the trial court on remand and because the issue has been briefed and argued by the parties.

784

ation). Mellekas's release of Mark V from its obligation to continue searching for a prospective buyer was sufficient consideration to discharge Mellekas's duty to pay the commission, *if* that was the parties' understanding. That is one of the purposes of the evidentiary hearing for which we remand this case—to determine whether the parties did in fact agree that, in exchange for Mellekas's release of Mark V's obligations under the listing agreement, Mark V relinquished its right to a commission.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

RANSOM, C.J., and FRANCHINI, J., concur.