This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**KIMBERLY B. FEINBERG,**

Petitioner-Appellee,

**v.**                                                                        **Nos. 31,839 and 32,201**
                                                                                    **(consolidated)**

**ROBERT H. FEINBERG,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Gerard J. Lavelle, District Judge**

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellee

Law Office of Peter H. Johnstone, P.C.
Peter H. Johnstone
Meredith A. Johnstone
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Judge.**

{1}    Robert Feinberg (Husband) appeals from two district court judgments relating to his child support and spousal support obligations to his former wife, Kimberly Feinberg (Wife). We consolidated Husband's two appeals, and we consider in this Opinion (1) whether the district court erred in interpreting the marital settlement agreement between Husband and Wife as it pertained to Husband's child support obligation, and (2) whether the district court erred in modifying Husband's spousal support obligation. We affirm the district court's judgment pertaining to spousal support, and we reverse the district court's judgment pertaining to child support. Additionally, we remand to the district court for an assessment of Wife's attorney fees incurred in the spousal support aspect of this appeal and for further proceedings as may be appropriate.

**BACKGROUND**

{2}    Wife filed for divorce on July 7, 2005. Husband and Wife negotiated and entered into a marital settlement agreement (the Agreement) that includes provisions regarding child support and spousal support. The Agreement states that it "shall be fully effective and binding upon the parties as of August 31, 2005." The judgment and final divorce decree (Divorce Decree) incorporating the Agreement was entered on March 23, 2006. The Agreement contains the following relevant provisions.

**V.  SPOUSAL SUPPORT**

2

A.  [Husband] shall pay spousal support to [Wife] as follows:

1.  Beginning September 1, 2005, through August 30, 2006, [Husband] shall pay to [Wife] nine percent . . . of the gross amount of each commission he earns;

2.  Beginning September 1, 2006[,] and continuing thereafter, [Husband] shall pay to [Wife] eight percent . . . of the gross amount of each commission he earns;

. . .;

4.  [Husband] shall pay to [Wife] on the last day of each month, her percentage share of [Husband's] total gross commission income earned for that month, less the guaranteed monthly minimum payment of $3,000 pursuant to Paragraph V.A.5. below[;]

5.  [Husband] shall cause [the entity with whom Husband has a contractual employment agreement] to pay directly to [Wife] a guaranteed minimum monthly sum of . . . [$3,000]. This sum shall be paid one-half on the first and one-half on the fifteenth day of each month. This amount shall be credited toward[ Husband's] obligation set forth herein. For example:

> If [Husband] receives gross commissions of $10,000 in month one, [Wife] would receive her guaranteed payment of $3,000, even though 9% of the $10,000 commission paid to [Husband] is $900, resulting in an overpayment to [Wife] in month one of $2,100. Then, in month two, if [Husband's] gross commission income is $100,000, [Husband] would pay to

3

[Wife] $9,000, less the $2,100 overpayment made in month one, for a total net payment to [Wife] in month two of $6,900.

If [Husband] receives gross commissions which would result in a payment over the minimum of $3,000 per month, [Husband] shall pay [Wife] the difference on the last day of each month. . . .

. . . ;

8. Spousal support shall terminate upon the death of [Wife.]

{3} The Agreement states that the parties have two children. At the time that the Agreement was drafted, the respective ages of the children were eighteen and fifteen. As to child support, the Agreement contains the following relevant provisions.

**VII. CHILD SUPPORT**

A. The parties shall provide for the support of their children as follows:

B. Beginning September 1, 2005[,] and continuing each month thereafter, [Husband] shall pay child support to [Wife] of . . . [$4,000]. The child support shall be paid one-half . . . on the first and one-half . . . on the fifteenth of each month beginning September 1, 2005. . . .

C. Attached hereto is Child Support Worksheet A. The parties have agreed to deviate from the New Mexico Child Support Guidelines. It is in the best interests of the parties' minor children that the parties deviate from the New Mexico Child Support Guidelines because of the need to stabilize cash flow to [Wife].

4

. . . .

G. The parties agree that the initial child support award is non-modifiable for four . . . years from the date of the entry of the [Divorce Decree] herein, unless [Husband] seeks a review of the spousal support payments to be made to [Wife] pursuant to Paragraph V. herein.

. . . .

J. The parties' child support obligation shall cease when the parties' youngest surviving child reaches age eighteen, is otherwise emancipated, dies, or by [o]rder of the [c]ourt, whichever occurs first. If a child is still in high school upon reaching his or her eighteenth birthday, then child support for that child shall continue through that child's date of graduation from high school or to age nineteen, whichever occurs first.

{4} On January 21, 2009, Wife filed a motion, together with an affidavit in support of the motion, for order to show cause against Husband alleging a willful violation of the Agreement and Divorce Decree regarding spousal support and child support. The supporting affidavit stated Wife's factual support for the order to show cause. In the affidavit, Wife stated, among other things, that pursuant to the March 23, 2006, Agreement and Divorce Decree, Husband was ordered to pay monthly child support in the amount of $4,000, one-half of which was to be paid on the first and one-half on the fifteenth day of each month, and the payments were to continue without modification until March 23, 2010. Wife stated that beginning on January 1, 2009, Husband had "failed, refused[,] and neglected to pay his court[-]ordered child support[.]" And Wife further stated that Husband had knowledge of and had the

5

ability to comply with the court-ordered child support and that Husband was in contempt of court for his non-compliance with the child support order.

{5} Also in the affidavit, Wife stated that, pursuant to the spousal support provisions of the Agreement, Husband was ordered to pay Wife "a guaranteed minimum monthly amount of $3,000[], payable one[-]half on the first day of each month and one[-]half on the fifteenth day of each month" and that beginning on January 1, 2009, Husband had "failed, refused[,] and neglected to pay his court[-]ordered spousal support." Wife stated that Husband had knowledge of and had the ability to comply with the court-ordered spousal support and that Husband was in contempt of court for non-compliance with the spousal support order. Wife further stated that Husband's counsel wrote to Wife and indicated to her that Husband had authorized his counsel to seek the district court's authority to terminate all financial obligations to her. And she stated that "[w]ithout seeking court authority[, Husband took] it upon himself to unilaterally and arbitrarily terminate all financial support to [Wife]."

{6} On February 3, 2009, the district court ordered Husband to appear in court on April 16, 2009, to show cause why he should not be held in contempt as a result of his failure to abide by the terms of the Agreement and the Divorce Decree regarding failure to pay child support and spousal support. On April 15, 2009, Husband filed

a motion to modify spousal support, claiming a substantial change in his income that prevented him from fulfilling his spousal support obligation and also claiming a substantial change in Wife's need for spousal support.

{7}     At the April 16, 2009, hearing, Wife argued that she agreed to a substantial deviation from the statutory child support guidelines that resulted in her receiving almost $6,000 per month less than the guidelines provided, in exchange for the non-modifiable provision of child support for four years, which represented the longest possible time that Husband would be obligated to support the youngest child in case he did not graduate from high school until he was nineteen years old. Husband argued that, pursuant to Paragraph VII(J) of the Agreement, child support ended when the youngest child turned eighteen in December 2008. Following the April 16, 2009, hearing on Wife's motion for order to show cause, the district court entered a minute order on the same day finding Husband in contempt of court for failing to pay child support of $4,000 and spousal support of $3,000 for the months of January, February, March, and April 2009. Husband satisfied his spousal support arrearage in open court and was ordered to continue to pay a minimum of $3,000 per month in spousal support, thereby purging himself of the court's contempt. Husband was also ordered to pay the child support arrearage by April 30, 2009. The court stated that Paragraphs VII(J) and VII(G) in the Agreement "appear[] to be in conflict" with one another. The

7

court ordered that future child support payments would be held in abeyance pending a ruling on Husband's motion to modify spousal support on the ground that Husband's income had substantially decreased and there had been a substantial change in circumstance in Wife's need for spousal support since the entry of the Divorce Decree.

{8}　　On April 27, 2009, Husband moved to reconsider the court's April 16, 2009, minute order pertaining to child support. Husband asserted that his "child support obligation in fact ceased in December[] 2008" and that he had fulfilled his child support obligations. Alternatively, Husband argued that, although he did not believe the language of the Agreement was unclear, insofar as the court interpreted Paragraphs VII(G) and VII(J) of the Agreement to be conflicting, equity must intervene, and that an equitable interpretation would lead to the conclusion that child support was to cease when the youngest child turned eighteen. On May 4, 2009, Wife filed a response to Husband's motion to modify spousal support and a countermotion to increase spousal support.

{9}　　On January 19, 2010, the district court held a hearing on Husband's motion to modify spousal support and his motion to reconsider regarding child support, as well as on Wife's countermotion to increase spousal support. On April 6, 2010, the district court entered an order reflecting its determinations regarding child support and

spousal support. Although the court's decision will be discussed in more detail later in this Opinion, in summary, the court's order (1) denied Husband's motion to modify spousal support and Wife's countermotion to increase spousal support because "there [had not been] a substantial and material change in circumstance" to support modification, and (2) determined that Husband would continue to pay Wife $4,000 per month for child support through March 2010 because, by stipulating to deviate from statutory child support guidelines and to a sum of $4,000 per month for four years, Husband saved $37,859, thereby receiving "the benefit of the bargain[.]" The child support issues raised by Husband on appeal pertain to the January 19, 2010, hearing and to the April 6, 2010, order. To the extent that the January 19, 2010, hearing and the April 6 order pertained to matters of spousal support, Husband states on appeal that he agreed with the district court's determinations.

{10}    In March 2011, Husband filed another motion to modify spousal support. For an unexplained reason, this motion is not part of the record on appeal. In September 2011, Wife filed an emergency motion for order to show cause, in which she stated that Husband had failed to pay the guaranteed $3,000 minimum monthly spousal support for the month of September 2011. The court issued an order on September 26, 2011, to show cause and a hearing was held on November 10, 2011. At that hearing, the court verbally ordered Husband to pay Wife $5,000 by 5:00 p.m. on

November 11, 2011, which amount represented approximately eight percent of Husband's gross commissions for the months of September and October 2011. Also at that hearing, the court entered a minute order stating that Husband would "continue to purge himself of contempt of court[ b]y paying to [Wife] the sum of [$3,000] in spousal support for [November] and [December] 2011."

{11} On January 10, 2012, the district court held an evidentiary hearing on Husband's motion to modify spousal support. In its February 16, 2012, order, the court entered its findings and conclusions. In relevant part, the court found that there had been a "substantial and material change in circumstance regarding [Husband's] income" and that Wife had become gainfully employed. The court modified Husband's spousal support obligation to Wife to a flat sum of $3,000 per month. Additionally, the court found that pursuant to the Agreement, and in accord with its order, Husband should have paid spousal support of $36,000 for 2011, but that he had paid only $32,000 for that year, and therefore, he owed Wife $4,000 in arrears for 2011, which sum he must pay in order to purge himself of the court's contempt. The spousal support issues raised in Husband's appeal arise from this February 16, 2012, order.

{12} In regard to child support, Husband argues on appeal that the district court erred in interpreting the Agreement to require him to pay child support after the youngest

child had attained his GED and turned eighteen. He also argues that the district court erred when it turned to child support guidelines and based its child support ruling on Husband's alleged benefit of the bargain. In regard to spousal support, Husband argues that the district court erred in disregarding the Agreement and instead modifying his spousal support obligation according to the principles of the alimony statute, NMSA 1978, § 40-4-7 (1997). We agree with Husband as to the child support, and we disagree as to the spousal support.

**Child Support**

{13}　　The Agreement required Husband to pay $4,000 monthly for child support beginning September 1, 2005. The parties expressly agreed that they were deviating from the statutory child support guidelines. They also expressly agreed that it was in the best interests of the children to deviate "because of the need to stabilize cash flow to [Wife]." The parties disagree on what provision controls the expiration of Husband's child support obligation. "We review issues of contract interpretation de novo." *Thompson v. Potter*, 2012-NMCA-014, ¶ 12, 268 P.3d 57.

{14}　　The district court determined that two provisions in the Agreement relating to child support, namely Paragraphs VII(G) and VII(J), created conflict with respect to when Husband's $4,000 monthly child support obligation ceased. The court resolved the conflict by determining that, pursuant to Paragraph VII(G), child support must be

11

paid for four years from the date of the Divorce Decree and, thus, until March 31, 2010. Influencing the district court's view that child support payments should be paid for the full four-year period under Subpart (G) was the court's review of and calculations based on the child support guidelines.

{15}     The sole rationale given by the court for its determination was the following. The amount of $229,859 through December 2008 would have been payable "strictly by the book," under the guidelines.  Further, "the bargain that the parties struck if it was forty-eight months times $4,000 he would have paid $192,000 in total child support." Thus, "he would have had a bargain there, the benefit of the bargain, in the amount of $37,859."  The court expressed the concern that if it could not "go back beyond December 31, 2008, the effect of that would be to increase his bargain by $60,000 over the $37,859 bargain that he already had . . . increas[ing] his bargain to $97,859 over what it would have been by the book."  The court then concluded that "the bargain that he struck was forty-eight months at $4,000 a month, so that's $192,000 total and that extends through March of this year [2010] to get the forty-eight months."  And the court thus ruled that child support was payable under Subpart (G) until the end of the four-year period, more specifically March 31, 2010.  Thus, notwithstanding that the parties' youngest child had acquired his GED in August 2008

12

and that he turned eighteen in December 2008, Husband was required to pay child support through March 2010.

{16} In Husband's view, the purpose of Subpart (G) was to allow modification of child support and spousal support to be considered together whenever, during the time child support was payable, Husband sought modification of spousal support. Husband argues that Subpart (G) did not and was not intended to modify or override Subpart (J). He asserted in his April 27, 2009, motion to reconsider that Subparts (G) and (J) of the Agreement could be read together without conflict and that Husband's child support obligations ceased in December 2008. He explained to the district court in the January 19, 2010, hearing why Subparts (G) and (J) did not create a conflict or ambiguity and that Subpart (G) did not control because "the four-year designation was there in case [the younger child] went through and was nineteen when he got to the end of the day." On appeal, in that regard, Husband argues that the district court failed to understand that the Agreement "became effective prior to the entry of the [Divorce] Decree" and that the four-year period "was calculated to the end at the point in time that the youngest minor child reached majority."

{17} Thus, Husband explains, because the youngest child reached eighteen and received his GED at approximately the same time, Husband's only obligation for the $4,000 payments should be the months that he paid child support starting September

13

1, 2005, through the child's eighteenth birthday, GED, and emancipation. Or, assuming arguendo that he somehow had a four-year obligation, "[i]f this Court were to calculate the forty-eight . . . month period in which child support was to be paid from September 1, 2005[,] child support would have terminated on August 31, 2009." Husband argues on appeal that the language of the Agreement was clear and it did not require interpretation and, further, that it was error for the district court to base its child support ruling on the "benefit of the bargain" rationale.

{18} Wife, on the other hand, argues that the district court "did not err in considering the benefit of the bargain to Husband[] and did not abuse its discretion in enforcing the child support provisions of the [Agreement], which required non-modifiable payments over four years." Relying on *C.R. Anthony Co. v. Loretto Mall Partners*, Wife argues that the court properly considered evidence of the circumstances surrounding the Agreement, including the statutory child support guidelines. *See* 112 N.M. 504, 508, 817 P.2d 238, 242 (1991) (recognizing that "where the terms of a contract are obscure and uncertain, evidence of . . . facts and circumstances surrounding the parties is admissible to enable the court to put itself in the place of the parties to the contract and to view it as they viewed it" (internal quotation marks and citation omitted)). Wife argues that her agreement to forego $37,859, payable under the child support guidelines, constituted her consideration in exchange for Husband's

14

agreement to the four-year support provision. For the reasons explained in the paragraphs that follow, we conclude that Wife's position is unpersuasive and that the district court's interpretation of the child support provisions of the Agreement was unsupportable.

{19} In reviewing contracts, "we view the contract as a harmonious whole, giv[ing] meaning to every provision, and accord[ing] each part of the contract its significance in light of other provisions." *Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 19, 131 N.M. 100, 33 P.3d 651. "We will not interpret a contract such that our interpretation of a particular clause or provision will annul other parts of the document, unless there is no other reasonable interpretation." *Id.* Additionally, "conflicting provisions must be reconciled so as to give meaning to both, rather than nullifying any contractual provision, if reconciliation can be effected by any reasonable interpretation of the entire instrument in light of the surrounding circumstances." *Id.* (internal quotation marks and citation omitted). "The question whether an agreement contains an ambiguity is a matter of law[.]" *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993).

{20} Paragraph VII(G) of the Agreement states that the initial $4,000 amount of child support was not modifiable for four years from the effective date of the Divorce Decree except upon a request by Husband for modification of spousal support.

15

Implicit in this paragraph is that if Husband sought a spousal support modification, any modification of child support by the court was discretionary. Paragraph VII(J) states that "[t]he parties' child support obligation shall cease" when the youngest child reached eighteen, but if the child were still in high school when he reached eighteen, child support would continue through graduation or age nineteen, whichever occurred first. Implicit in this paragraph is the traditional rule in New Mexico that the obligation of a parent to pay child support "continues until the child reaches the age of majority." *See Britton v. Britton*, 100 N.M. 424, 426, 671 P.2d 1135, 1137 (1983); *see also* NMSA 1978, § 28-6-1(A) (1973) ("[A]ny person who has reached his eighteenth birthday shall be considered to have reached his majority[.]").

{21} Nothing in Subpart (G) refers to Subpart (J), and nothing in Subpart (J) refers to Subpart (G). Nothing in the Agreement nor any reading of the Agreement as a whole indicates that these two provisions are in conflict or inconsistent. And, in our view, Subparts (G) and (J) can be read together so that they do not demonstrate a conflict.

{22} Viewing the child support provisions in Subparts (G) and (J) as part of a harmonious whole, they reflect an intent of the parties to ensure that Wife would receive child support for the duration of the youngest child's dependency, recognizing the possibility that his high school education could continue beyond his eighteenth

16

birthday. Nothing in Subpart (G) reflects an intent of the parties to saddle Husband with a child support obligation that would run further than the limitations in Subpart (J). Under Subpart (G), if Husband sought a change in spousal support during the extended period of the youngest child's nineteenth year, while in high school, the court had discretion to change an otherwise non-modifiable child support obligation. To read into Subpart (G) an intent to obligate Husband to pay four years of child support under the facts of this case wholly nullifies Subpart (J). Nullification of Subpart (J) could not have been the intent of the parties or the district court that approved the Agreement, and in light of the reasonable alternative interpretation that gives effect to both provisions, we decline to entertain that view of the Agreement. *See Pub. Serv. Co. of N.M.*, 2001-NMCA-082, ¶ 19 (stating that "[w]e will not interpret a contract such that our interpretation of a particular clause or provision will annul other parts of the document, unless there is no other reasonable interpretation").

{23}     Because the Agreement can be read harmoniously as to give effect to Subpart (G) and Subpart (J), and to avoid nullifying either provision, we hold that the district court erred in determining that the provisions created a conflict. Additionally, in light of the express best interests and guideline deviation provision in Paragraph VII(C) in the Agreement, we are not persuaded by Wife's argument or the court's rationale for its ruling that the guidelines can be invoked as evidence permitting the court to

17

construe Subpart (G) as controlling and Subpart (J) as inapplicable or ineffective. While we recognize that "[t]he court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear[,]" *Mark V, Inc.*, 114 N.M. at 781, 845 P.2d at 1235, in this case we see no reasonable basis for the district court to have turned to the statutory child support guidelines as a basis for interpreting the intent of the parties. The court's reliance on those guidelines was contrary to the expressed intention in the Agreement that the parties would deviate from those guidelines. Further, the court's reliance on the guidelines stemmed from its legally erroneous view that Subparts (G) and (J) were in conflict. *See id.* (stating that whether an agreement contains an ambiguity is a question of law); *Pub. Serv. Co. of N.M.*, 2001-NMCA-082, ¶ 19 (stating that "conflicting provisions must be reconciled so as to give meaning to both, rather than nullifying any contractual provision, if reconciliation can be effected by any reasonable interpretation of the entire instrument in light of the surrounding circumstances" (internal quotation marks and citation omitted)). To invoke the guidelines to require child support under Subpart (G) when, under Subpart (J), there exists no child support obligation, is to impermissibly rewrite the parties' agreement. *See Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶ 23, 123 N.M. 526, 943

P.2d 560 ("A court cannot change contract language for the benefit of one party to the detriment of another.").

{24} Having concluded that no inconsistency, conflict, or ambiguity exists in regard to Subparts (G) and (J) and that the Agreement's child support provisions can be read harmoniously, we conclude that the district court had no rational basis upon which to address child support arrearage in its April 16, 2009, minute order and again in the January 19, 2010, hearing or to order payment of future child support. After December 2008, Husband's child support obligation ceased. To the extent that the court found, in January 2010, that Wife's financial needs exceeded the sum of her spousal support, the district court should have considered at that time whether to modify Husband's spousal support obligations rather than accommodating Wife's needs by extending child support through March 2010.

{25} Having concluded that the court's interpretation of the relevant child support provisions in the Agreement was erroneous, we note that Husband's appeal is unclear in terms of what he requests of this Court in terms of child support. He asks only that this Court remand for further proceedings. Presumably, by his appeal, Husband seeks to recoup the amount that he paid as child support after December 2008. Whether or how, if at all, that can or should be accomplished is best left to the district court to determine. Accordingly, we remand for the district court to determine how, in

19

accordance with this Opinion, the issue of child support paid to Wife by Husband after December 2008 should be resolved.

**Spousal Support**

{26}     The parties disagree on whether the district court erred in modifying Husband's spousal support obligation to a flat rate of $3,000 monthly from March 2011 and continuing indefinitely. While Wife requests that we affirm the district court's spousal support modification judgment, Husband argues that the court should have adhered exclusively to Paragraph V(A)(2) of the Agreement such that his spousal support obligation would be limited to eight percent of his gross commissions. Husband and Wife agree, however, that the district court had discretion to modify spousal support pursuant to the alimony statute, Section 40-4-7.

{27}     The district court may modify and change any order in respect to spousal support for an indefinite duration "whenever the circumstances render such change proper[.]" Section 40-4-7(B)(1)(c), (2)(a). A decision whether to modify spousal support is within the sound discretion of the district court and will not be altered unless the appealing party demonstrates that the court abused its discretion. *Russell v. Russell*, 111 N.M. 23, 27, 801 P.2d 93, 97 (Ct. App. 1990). "When there exist reasons both supporting and detracting from a trial court decision [regarding the level

20

of spousal support to be paid], there is no abuse of discretion." *Talley v. Talley*, 115 N.M. 89, 92, 847 P.2d 323, 326 (Ct. App. 1993).

{28} Husband's position is that the court abused its discretion by failing to strictly adhere to Paragraph V(A)(2) of the Agreement, which provided that Husband was required to pay Wife eight percent of each commission he earns, beginning September 1, 2006. He argues that if the court strictly adhered to the language of the Agreement in making its child support determination, it was required also to strictly adhere to the language of the Agreement in making its spousal support determination. Husband argues that "[t]he eight percent . . . formula would continue to work in good times or bad[,]" and he argues that the court should have applied that formula, rather than considering Wife's need for or Husband's ability to pay spousal support. In making this argument, however, Husband ignores Subparts (A)(4) and (5) of Section V of the Agreement, which provided that Wife was to receive a "guaranteed monthly minimum" spousal support payment of $3,000. Husband provides no rational argument to show how, in light of his monthly minimum obligation under Subparts (A)(4) and (5), a strict adherence to the eight percent formula of Subpart (A)(2) would comport with his minimum monthly obligation under Subparts (A)(4) and (5). Thus, Husband's argument that the district court should have strictly abided by Paragraph

21

V(A)(2) is essentially an argument that the court should have nullified Subparts (A)(4) and (5).

**{29}** Owing to the minimum monthly obligation contained in Subparts (A)(4) and (5), the district court concluded that the Agreement lacked a clear provision for the calculation of spousal support if Husband's income was reduced so substantially that eight percent of his monthly income would not amount to $3,000. Accordingly, rather than reading the Agreement so as to give no effect to Subparts (A)(4) and (5), the court concluded that the only way to resolve the case was to set aside the Agreement and modify spousal support pursuant to the principles of the alimony statute. *See* § 40-4-7(E) (setting out a number of factors for the court to consider in determining the amount of a spousal support obligation, including the parties' current and future earnings and earning capacity, their good-faith efforts to maintain employment or become self-supporting, their reasonable needs, and their respective liabilities).

**{30}** In sum, the court properly avoided interpreting the Agreement so as not to nullify Subparts (A)(4) and (A)(5). *See Pub. Serv. Co. of N.M.*, 2001-NMCA-082, ¶ 19 (stating that contracts should be interpreted so as to avoid nullifying any provision). Under these circumstances, the court did not abuse its discretion in modifying Husband's spousal support obligation as it did. Husband's argument to the contrary provides no basis for reversal.

{31}     Further, as to Husband's argument that the district court erred in finding that Husband had the ability to pay $3,000 per month in spousal support, we disagree. Husband's argument is premised on evidence that was presented at the January 10, 2012, hearing regarding his budget. Having considered the evidence, the court found that Husband was "choosing to spend his money in ways that sabotag[ed] his budget[.]" The court also noted that there were debt obligations included in his budget that were incurred after he entered into the Agreement and that his budget was not a reasonable one.

{32}     On the other hand, the court found that Wife's budget was reasonable and that notwithstanding she had, in good faith, acquired a job at which she was capable of making $2,000 per month, Wife had a need of additional income of $3,000 per month, which Husband could afford to pay. The court's decision was consistent with New Mexico statutory law. *See* § 40-4-7(E)(3), (4), (10) (stating factors that the court shall consider when determining the appropriate amount of spousal support, including the good-faith efforts of the spouses to maintain employment, the reasonable needs of the spouses, and the agreements entered into in contemplation of the dissolution of marriage). The court did not abuse its discretion in assessing and modifying the amount of Husband's spousal support obligation.

{33}     We are also unpersuaded by Husband's argument that the court erred in applying the $3,000 per month spousal support obligation retroactively. Relying on *Mask v. Mask*, 95 N.M. 229, 620 P.2d 883 (1980), Husband argues that "New Mexico case law clearly does not allow retroactive modification of support orders except to the date of filing of a petition or motion to modify." In *Mask*, our Supreme Court considered, among other issues, whether a father obligated to pay child support could offset the amount he owed in child support arrears by the amount of support that the child had received from the Social Security Administration by virtue of the father's contributions to social security and his retirement. *Id.* at 230-31, 620 P.2d at 884-85. The Court stated that "[g]enerally[,] a court cannot retroactively modify a support order that has accrued and become vested." *Id.* at 231, 620 P.2d at 885. Under the particular facts of that case, however, the Court held that principles of equity entitled the father to a credit against his support obligation in the amount of the social security benefits for each month that the child received those benefits. *Id.* The *Mask* Court neither considered whether nor held that support orders may only be retroactively modified to the date of filing of a petition or a motion to modify. Thus, *Mask* does not stand for the proposition for which Husband cites it. *See Fernandez v. Farmers Ins. Co. of Ariz.*, 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) ("[C]ases are not authority for propositions not considered." (internal quotation marks and citation omitted)).

24

Nevertheless, because the district court ordered retroactive application of its spousal support order to coincide with the date of Husband's motion to modify spousal support, Husband's argument essentially amounts to a position that the court was permitted to do what it did. The record shows that Husband filed a motion to modify spousal support in March 2011, and Husband concedes in his brief in chief that the court "made its retroactive modification based on the filing date of [his] motion." Thus, Husband's argument in this regard does not provide a basis for reversal.

**Attorney Fees On Appeal**

{34} Wife requests this Court to order that Husband pay Wife her reasonable attorney fees incurred on appeal. "New Mexico law permits the award of attorney fees on appeal in domestic relation cases." *Rhinehart v. Nowlin*, 111 N.M. 319, 330, 805 P.2d 88, 99 (Ct. App. 1990). As Husband provides no reply argument to Wife's request of appellate attorney fees, we are provided no basis for denying her request in regard to fees incurred on the spousal support issue. *See Delta Automatic Sys., Inc. v. Bingham*, 1999-NMCA-029, ¶ 31, 126 N.M. 717, 974 P.2d 1174 (concluding that the appellant had conceded an argument that was raised in the appellee's answer brief but not addressed in the appellant's reply brief). Accordingly, we remand to the district court for an assessment of Wife's reasonable attorney fees for the spousal support aspect of this appeal.

**CONCLUSION**

{35}     We reverse the district court's judgment regarding Husband's child support obligations and remand to the district court for further proceedings as may be appropriate. We affirm the district court's judgment as to Husband's spousal support obligations and remand to the district court for the assessment of Wife's reasonable attorney fees incurred for the spousal support aspect of this appeal.

{36}     **IT IS SO ORDERED.**


_____
**JONATHAN B. SUTIN, Judge**


**WE CONCUR:**


_____
**RODERICK T. KENNEDY, Chief Judge**


_____
**JAMES J. WECHSLER, Judge**